Douglas S. GARD, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. C–74–1971–CBR.

United States District Court,
N. D. California.

Sept. 20, 1976.

John C. Stein, Boccardo, Blum, Lull, Niland, Teerlink & Bell, San Francisco, Cal., for plaintiff.

James L. Browning, U. S. Atty., Paul J. Fitzpatrick, Asst. U. S. Atty., San Francisco, Cal., for defendant.

### ORDER GRANTING SUMMARY JUDGMENT

RENFREW, District Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. to recover damages for injuries plaintiff suffered from falling down a vertical shaft inside an abandoned mine on United States Government land in Churchill County, Nevada. Plaintiff claims that his injuries resulted from the Government's negligence in failing to take measures to protect the public from the danger presented by this mine. Defendant has moved to dismiss the case for failure to state a claim or, in the alternative, for summary judgment. A hearing was held on January 20, 1976. At that hearing the parties indicated they needed further discovery before the Court could properly rule on defendant's motion. The parties have concluded the necessary discovery, and the matter is now ripe for decision.

In December, 1972, plaintiff and three friends, all California college students, embarked upon a short vacation drive through parts of Nevada. As the group was returning to California on December 30, 1972, along Interstate 50, their attention was caught by an A-frame apparatus covering an old mine located approximately 200 yards from the highway. The mine had a vertical shaft, and three of the four men, including plaintiff, descended a wooden ladder to the bottom. It was apparent that the mine was old and deserted and that it had not been kept in a state of repair.

After exploring the vertical A-frame mine, the group decided to explore other mines in the area. The mine in which the accident occurred (hereinafter "the mine") was approximately the same distance from the highway as the A-frame mine, but it was not as noticeable. This mine also appeared to be old, deserted, and not kept in a state of repair. The four entered the mine single file through a horizontal shaft cut into the side of a hill, with plaintiff second in line. Their only equipment was a single flashlight. About 50 feet into the mine, the third man, Rarig, complained that he was not receiving enough light. The flashlight was given to him and the group proceeded further along the horizontal shaft. At approximately 100 feet into the mine the men discovered a horizontal tunnel to the left. They discussed which branch to take and decided to go straight ahead. Plaintiff then took the lead, and the third man in line kept the flashlight. Almost immediately, plaintiff either tripped or stepped into a vertical shaft and fell to the bottom. The impact of the fall caused plaintiff to become a permanent quadriplegic.

The Federal Tort Claims Act allows plaintiffs to recover damages for injury

"caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

■ It is undisputed that plaintiff was engaged in "sightseeing" or other "recreational" activities when he incurred his injuries, and that he had not received permission from the United States to enter the mine. Nevada law provides that:

"An owner * * * of premises owes no duty to keep the premises safe for entry or use by others for * * * sightseeing, or for any other recreational purposes, or to give warning of any hazardous condition, activity or use of any structure on such premises to persons entering for such purposes, except as provided in subsection 3 of this section." Nevada Revised Statutes ("NRS") 41.510.

Subsection 3 provides that:

"3. This section does not limit the liability which would otherwise exist for:
"(a) *Willful or malicious* failure to guard, or to warn against, a dangerous condition, use, structure or activity." *Ibid.* (emphasis supplied).

Thus, plaintiff cannot recover damages under Nevada law,[1] and, hence, the Federal Tort Claims Act, unless he can show that a federal employee willfully or maliciously failed to guard or warn against the danger presented by the mine.

■ Forty-three states have "sightseer" statutes similar to NRS 41.510. The purpose of such a statute is

"to encourage owners of land within rural areas to make land and water areas available for recreational purposes by limiting their liability towards persons entering thereon for such purposes." Colorado Rev.Stat., Title 33, Art. 41, § 101.

The Nevada legislature clearly envisioned limiting liability under its statute to landowners who intentionally allow dangerous structures to remain unguarded and without warning, with the knowledge that someone will be injured. Under Nevada law, in order for a defendant to commit a willful injury, "'there must be design, purpose and intent to do wrong and inflict the injury * * *.'" *Crosman v. Southern Pacific Co.*, 44 Nev. 286, 194 P. 839, 843 (1921); *Rocky Mountain Produce Trucking Co. v. Johnson,* 78 Nev. 44, 369 P.2d 198, 201 (1962). Similarly, malicious acts are those done intentionally without justification or excuse. *See Linkhart v. Savely,* 190 Or. 484, 227 P.2d 187, 197 (1951).

■ The undisputed facts of this case fail to show that defendant or any of its employees willfully or maliciously failed to guard or warn against the mineshaft that caused plaintiff's injuries. There is no evidence that any employee of the United States had ever even inspected the mine. Defendant submitted affidavits from Robert T. Webb, the Supervisory Mining Engineer for the Nevada State Office of the United States Bureau of Land Management, and Richard M. McAlexander, a mining engineer employed by the Mining En-

---

1. In hopes of taking advantage of the California rule on comparative negligence, plaintiff argues that California law should govern in this case rather than Nevada law. *See Li v. Yellow Cab Company of California*, 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975). This argument is inconsistent with plaintiff's position that defendant is negligent, because it violated Nevada law. Moreover, the only Nevada case plaintiff cites in support is *Tab Construction Co. v. Eighth Judicial District Ct.*, 83 Nev. 364, 432 P.2d 90 (1967), but the court in that case held that Nevada law should apply.

The purpose of NRS 41.510 is to encourage Nevada land owners to let sightseers use their land for recreational purposes. To hold that the law does not apply to sightseers from other states would thwart that purpose. In any event, plaintiff's chances would not be improved by applying California law since California has a sightseer statute substantially the same as NRS 41.510. *See* California Civil Code § 846 (Supp.1976).

forcement and Safety Administration, United States Bureau of Mines. Both Webb and McAlexander stated that they had never personally viewed the mine before the accident, and they had only suspected that it existed because of nearby mine dumps visible from the highway. Moreover, Webb stated that in the 10 years he has overseen the Bureau's mineral management program in Nevada, he has never noticed any activity or persons in the vicinity of the two mines involved here, has never received any other expression of concern about the mines' safety from members of the public or federal employees, and has never heard of any other accident involving either mine. He also states that to his knowledge no Bureau of Land Management employee had ever been in either mine before the accident in this case.

Plaintiff argues that the United States violated NRS 455.010 by not erecting some kind of safeguard at the entrance to the mine. NRS 455.010 was enacted in 1866 and provides that the owner

> "of any shaft, excavation or hole, * * * [shall] cause to be erected, good and substantial fences or other safeguards, and keep the same in good repair, around such works or shafts, sufficient to guard securely against danger to persons and animals from falling into such shafts or excavations."

The statute's only sanction is a $100.00 fine and it contains no provision for creating a civil cause of action.

■ An examination of NRS 455.010 and the Nevada court decisions interpreting it indicates that the statute does not apply to this case. The leading Nevada case interpreting NRS 455.010 is *Orr Ditch & Water Co. v. Justice Court of Reno Tp.,* 64 Nev. 138, 178 P.2d 558 (1947), in which the Nevada Supreme Court was saddled with the task of determining whether irrigation ditches were included within the meaning of "excavation" in the statute. After some 19 pages of analysis, Justice Horsey concluded that they were not. Justice Horsey tracked the history of the statute and determined that the legislature had intended

to protect individuals and animals from inadvertently falling into the numerous exposed holes that had been dug around mining towns in search of ore and water. 178 P.2d at 575–576. The court also pointed to the great cost that would be involved in fencing irrigation ditches as further evidence that the legislature had not intended to include them in the statute.

The entrance to the mine in this case is horizontal. The purpose of NRS 455.010 is to protect "persons and animals from *falling into* * * * shafts or excavations." (Emphasis supplied.) This language, together with the historical backdrop discussed in *Orr Ditch,* makes it apparent that the legislature did not intend the statute to apply to horizontal tunnels leading into mines. The Supreme Court of the State of Washington has held that a Washington statute identical to NRS 455.010 does not require the fencing of horizontal mine entrances:

> "In view of the language of this statute [now codified at RCWA 78.12.010] and the dangerous results which were sought to be prevented, it cannot be said that the statute means, when it says that the guards are for the purpose of preventing the 'falling' of persons into excavations, that thereby tunnels and slopes should have been so guarded that no one could walk into them. * * * The deceased, having voluntarily walked into the passageway, cannot be said to have 'fallen' into it, nor was the passageway of such character as to make it possible for him to 'fall' into it. The purpose of the law was to prevent an involuntary entrance into a 'shaft, excavation or hole'." *Dernac v. Pacific Coast Coal Co.,* 110 Wash. 138, 188 P. 15, 16 (1920).

The vertical shaft into which plaintiff fell was located within the mine. NRS 455.010, however, does not apply to such shafts. As discussed above, the purpose of the statute is to protect persons and animals who are, in effect, "minding their own business" and unexpectedly fall into a hole. The court in *Orr Ditch* speaks of protecting pedestrians and roaming cattle, not people who realize

they are inside a mine. 178 P.2d at 576. Had the legislature intended to deal with shafts inside of mines, they would have used more specific terms such as adit or winze. Moreover, since the statute does not differentiate between operating and non-operating mines, plaintiff's construction of the statute would require owners to erect barricades inside working mines—a practice that would undoubtedly interfere with mining operations. Finally, the cost of exploring the thousands of abandoned mines in Nevada and barricading any winzes contained therein would be staggering.

■ Even if the United States had violated NRS 455.010, plaintiff could not recover damages in this case. Violation of a general criminal statute that does not create a civil cause of action is only evidence of negligence or, at most, constitutes negligence *per se*.[2] *See* W. Prosser, *Law of Torts* 200–202 (4th Ed. 1971). NRS 41.510, however, requires plaintiff to prove that defendant's omissions were willful or malicious. Hence, even if the United States were held negligent as a matter of law, plaintiff would not meet his burden.

There is no dispute as to any material fact in this case, and plaintiff has, as a matter of law, failed to show that the United States willfully or maliciously failed to guard or warn against the dangerous condition existing within the mine where plaintiff was injured.

Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.

2. The two Nevada decisions holding defendants liable for civil damages resulting from their violation of NRS 455.010 have both done so on the ground of negligence. In *Anderson v. Feutsch*, 31 Nev. 501, 103 P. 1013, 1013–1014 (1909), the plaintiff alleged that "the defendants had negligently failed to properly safeguard to prevent accidents to pedestrians passing along" the street. The court found that "this is not such a case that defendants could be relieved of responsibility by showing that, if negligence existed, it was the fault of an independent contractor." In *Dixon v. Simpson*, 74 Nev. 358, 332 P.2d 656, 658 (1959), the court followed the decision in *Anderson v. Feutsch*. While the court spoke of the plaintiff's contention that liability was imposed on the defendant by NRS 455.010, it decided the case on the ground of negligence. *See Cosgriff Neon Company v. Mattheus,* 78 Nev. 281, 371 P.2d 819, 822 (1962); *Belcher v. Nevada Rock & Sand Company,* 516 F.2d 859, 861 (9 Cir. 1975).