**Douglas S. GARD, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

No. 77–1484.

United States Court of Appeals, Ninth Circuit.

Feb. 8, 1979.

Rehearing Denied April 19, 1979.

Michael G. Briskie, Mountain View, Blum, Lull, Niland & Bell, San Francisco, Cal., for plaintiff-appellant.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for defendant-appellee.

Before MOORE,* WRIGHT and CHOY, Circuit Judges.

* Hon. Leonard P. Moore, Senior United States Circuit Judge, for the Second Circuit, sitting by designation.

PER CURIAM.

Plaintiff Gard appeals from the district court's granting of defendant's summary judgment motion in his personal injury action against the United States. We affirm.

## I. *Statement of the Case* ·

During their Christmas vacation from college in 1972, Gard and three friends took a car tour through Nevada. The four students were between 18 and 19 years old. While driving, the men saw an A-frame apparatus covering an old mine on federal property approximately 200 yards from the highway. The mine had a vertical shaft, and Gard and two of his friends descended a wooden ladder to the bottom. It was apparent that the mine was old and deserted and had not been kept in repair.

After leaving the A-frame mine, the men decided to explore other mines in the area. The four entered the mine in which Gard's accident occurred. It was as far from the road as the A-frame mine, but not as noticeable. It was also old, deserted, and in ill-repair. The four men entered the mine in single file. After a while, their only flashlight was passed to the third man in line. About 100 feet into the mine they discovered a horizontal shaft. While the third man retained the flashlight, Gard took the lead and proceeded down the horizontal tunnel. Almost immediately he either tripped or stepped into a vertical shaft and fell to the bottom. The impact of the fall caused Gard to become a permanent quadriplegic.

Gard brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671. Gard claimed that the Government had been negligent in not protecting the public from the dangerous mine. The Government moved to dismiss the case for failure to state a claim, or in the alternative, for summary judgment. After a hearing and after affording the parties more time for discovery, the district court granted the Government's motion for summary judgment. *Gard v. United States*, 420 F.Supp. 300 (N.D.Cal. 1976).

## II. *Standard of Review*

This court has noted the standard for reviewing a granting of summary judgment:

First, is there any genuine issue as to any material fact? Second, if there is no genuine issue of fact, then viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, is the movant entitled to prevail as a matter of law. [sic]

*MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 488 (9th Cir.), *cert. denied*, 429 U.S. 887, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976); *see Loya v. Immigration & Naturalization Service*, 583 F.2d 1110, 1114 (9th Cir. 1978). The district court held that summary judgment was appropriate because as a matter of law Gard could not recover even when the facts were considered in the light most favorable to him. We agree.

## III. *Effect of Nevada Sightseer Statute*

The Federal Tort Claims Act, under which Gard sues, allows plaintiffs to recover damages against the Government for injury

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Noting that the parties agreed that Gard was engaged in "sightseeing" and "recreational" activities when injured and that he had not received permission from the United States to enter the mine, the district court referred to Nevada Revised Statutes § 41.510(1):

An owner . . . of premises owes no duty to keep the premises safe for entry or use by others for . . . sightseeing, or for any other recreational purposes, or to give warning of any hazardous condition, activity or use of any structure on such premises to persons entering

for such purposes, except as provided in subsection 3 of this section.

Subsection 3 provides in relevant part:

This section does not limit the liability which would otherwise exist for:

(a) Willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity.

The district court concluded:

Thus, plaintiff cannot recover damages under Nevada law, and, hence, the Federal Tort Claims Act, unless he can show that a federal employee willfully or maliciously failed to guard or warn against the danger presented by the mine.

420 F.Supp. at 302 (footnote omitted).

■ On appeal, Gard contends that § 41.-510 does not apply to the Government. He argues first that the purpose of § 41.510 is to encourage landowners to open up their land to recreational use and that such a rationale does not apply to the Government. We disagree. Gard does not suggest that the Government could not completely close various federal lands to public use if it felt its potential tort liability was too great. Thus the principle of encouraging landowners to open their land by limiting potential tort liability applies with equal force to the Government as to other landowners.

Second, Gard refers to a Wisconsin decision holding that the Wisconsin sightseer statute did not apply to a municipality. *Goodson v. Racine,* 61 Wis.2d 554, 213 N.W.2d 16, 19 (1973). The Wisconsin Supreme Court noted that "[t]he legislative intent of the statute is obvious" in limiting its scope to private individuals. *Id.* By contrast, where statutes have not been explicitly limited to private individuals, the federal courts have held that they may apply to the United States under the Federal Tort Claims Act. *See, e. g., Blair v. United States,* 433 F.Supp. 217, 219 (D.Nev.1977) (§ 41.510); *Hamilton v. United States,* 371 F.Supp. 230, 233–34 (E.D.Va.1974). Such application is consistent with Congress' direction in § 1346(b) that the Government should be treated as would be a "private person" under applicable state law. *See Martin v. United States,* 546 F.2d 1355, 1361 (9th Cir. 1976), *cert. denied,* 432 U.S. 906, 97

S.Ct. 2950, 53 L.Ed.2d 1078 (1977); *Smith v. United States,* 546 F.2d 872, 878–79 (10th Cir. 1976); *Hamilton,* 371 F.Supp. at 233.

We conclude that the district court properly applied the Nevada sightseer statute and that Gard could recover only by showing willful or malicious failure to guard or warn.

The district court rejected Gard's assertion that the required willfulness could be found in the Government's failure to put warnings or a fence around the mine. The district court noted:

The Nevada legislature clearly envisioned limiting liability under its statute to landowners who intentionally allow dangerous structures to remain unguarded and without warning, with the knowledge that someone will be injured. Under Nevada law, in order for a defendant to commit a willful injury, " 'there must be design, purpose and intent to do wrong and inflict the injury * * *.' " *Crosman v. Southern Pacific Co.,* 44 Nev. 286, 194 P. 839, 843 (1921); *Rocky Mountain Produce Trucking Co. v. Johnson,* 78 Nev. 44, 369 P.2d 198, 201 (1962). Similarly, malicious acts are those done intentionally without justification or excuse. *See Linkhart v. Savely,* 190 Or. 484, 227 P.2d 187, 197 (1951).

420 F.Supp. at 302. Applying this standard the court found:

The undisputed facts of this case fail to show that defendant or any of its employees willfully or maliciously failed to guard or warn against the mineshaft that caused plaintiff's injuries. There is no evidence that any employee of the United States had ever even inspected the mine. [An affidavit from the Supervisory Mining Engineer for the Nevada State Office of the United States Bureau of Land Management] stated that in the 10 years he has overseen the Bureau's mineral management program in Nevada, he has never noticed any activity or persons in the vicinity of the two mines involved here, has never received any other ex-

pression of concern about the mines' safety from members of the public or federal employees, and has never heard of any other accident involving either mine. He also states that to his knowledge no Bureau of Land Management employee had even been in either mine before the accident in this case.

*Id.* at 302–03.

Gard responds that the district court employed too strict a test of willfulness. He argues that the court should have limited *Crosman's* definition of willful to the context of willful injury and not willful failure. He asks that this court adopt what he considers the superior definition of willfulness employed in a decision of the Georgia Court of Appeals, reversed by the Georgia Supreme Court on other grounds. *McGruder v. Georgia Power Co.*, 126 Ga.App. 562, 191 S.E.2d 305 (1972), *rev'd*, 229 Ga. 811, 194 S.E.2d 440 (1972). Gard claims that willfulness according to the *McGruder* definition can be proved.

■ Gard, however, ignores the congressional instruction that under the Federal Tort Claims Act, "the law of the place where the act or omission occurred" should apply. 28 U.S.C. § 1346(b); *see Martin*, 546 F.2d at 1361; *Smith*, 546 F.2d at 878–79; *Blair*, 433 F.Supp. at 219; *Hamilton*, 371 F.Supp. at 233. Thus the district court could not choose to follow whatever law it felt to be most enlightened. And *Crosman* did not limit its definition of willfulness to

willful injury. In *Crosman*, a plaintiff sought to establish that the defendant had acted willfully or wantonly in failing to protect plaintiff from injury on defendant's railroad tracks, so as to circumvent the defense of contributory negligence. After adopting "a general definition of what constitutes . . . willful or wanton conduct as will warrant recovery of damages by an injured party, notwithstanding his own contributory negligence," the Nevada Supreme Court wrote:

> It clearly appears that the conduct of respondent's employees could not have been due to willfulness, that is to say, to a design to inflict injury. The evidence shows conclusively that appellant's presence on the track was unknown to them and was not discovered before the collision . . . . .
>
> Under all the circumstances in evidence, we have no hesitancy in holding that the lower court was justified in withholding the case from the jury as to any element of willfulness.

44 Nev. at 301–02, 194 P. at 843–44. The district court found this same essential element lacking here. 420 F.Supp. at 302–03.[1]

■ In short, though we are reluctant to approve of summary judgment where willfulness is an issue,[2] summary judgment was proper here in light of the district court's finding that "[t]he undisputed facts of this case fail to show that defendant . . . willfully or maliciously failed to guard or warn . . . . . *Id.* at 302.

1. The very decision upon which Gard relies refutes his apparent contention that a case specifically dealing with willfulness in the context of an injury claim cannot apply to the definition of willfulness in other contexts. The Georgia Court of Appeals in *McGruder* based its definition of willfulness on *Carpenter v. Forshee*, 103 Ga.App. 758, 120 S.E.2d 786 (1961). That case dealt with willful or wanton failure to comply with a support decree. *Carpenter* in turn based its definition on cases involving willfully swearing falsely, *King v. State*, 103 Ga. 263, 30 S.E. 30 (1898), willfully attempting to influence a juror, *Richardson v. State*, 43 Ga. App. 229, 158 S.E. 369 (1931), and willfully abandoning a child, *McComas v. Glendinning*, 59 Ga.App. 234, 200 S.E. 304 (1938). In short,

we must reject Gard's contention that the district court was free to ignore the law enunciated by the Nevada Supreme Court in *Crosman* and choose whatever law it felt wisest.

2. Gard also argues that the court should be very wary of granting summary judgment when issues like willfulness—which may involve questions of individuals' intent or motive—are at issue. We agree. But the existence of such questions, usually considered by the trier of facts, does not prevent use of summary judgment when the requirements for summary judgment are nonetheless satisfied. *See Flying Diamond Corp. v. P. Pennaluna & Co.*, 586 F.2d 707, 712 (9th Cir. 1978).

## IV. *Fencing Statute*

■ Gard refers to Nevada Revised Statutes § 455.010, requiring that the owner of any shaft, excavation or hole [shall] cause to be erected, good and substantial fences or other safeguards, and keep the same in good repair, around such works or shafts, sufficient to guard securely against danger to persons and animals from falling into such shafts or excavations.

He claims that there is a triable issue of fact as to whether the Government violated this statute. The district court noted, however, that violation of the statute, even if proved,[3] would constitute evidence of negligence or at most negligence per se. A showing of negligence would not be sufficient to invoke subsection (3) so as to circumvent the sightseer statute's limitation on recovery. *See Crosman*, 44 Nev. at 304, 194 P. at 845, W. Prosser, Law of Torts 200–02 (4th ed. 1971).

In his reply brief Gard argues that "the defendant's willful action violated Nevada Revised Statute 455.010 which, under Nevada law, would impose liability . . . ." If Gard is arguing that the Government willfully failed to guard or warn, the district court's finding that there was no evidence of willfulness is a sufficient response. *See* part II *supra.* If Gard is arguing that the Government's violation of a statute creates liability, then the sightseer statute bars recovery as noted *supra.* Thus the district court was correct in rejecting Gard's claim based on § 455.010.[4]

## V. *Constitutional Claim*

■ Gard raises constitutional challenges to § 41.510 before this court that were not raised in the court below. Gard acknowledges that "[t]he general rule is that an issue will not be considered for the first time on appeal." He contends that because of the significance of the issue and the possibility of injustice, this court in its discretion should consider the claims.

Gard offers no exceptional circumstances explaining why these claims could not have been raised in the district court. Mindful of "[t]he importance of the rule" against raising claims for the first time before this court "to the practical administration of the judicial system," we decline to address the constitutional claims. *Westinghouse Electric Corp. v. Weigel*, 426 F.2d 1356, 1357 (9th Cir. 1970); *see Frommhagen v. Klein*, 456 F.2d 1391, 1395 (9th Cir. 1972).

AFFIRMED.

---

**3.** Because of our holding, we need not discuss the district court's alternative reasons for rejecting Gard's § 41.510 claim.

**4.** Gard contends that this court should reverse the summary judgment because subsequent to oral argument on the summary judgment motion, one deponent changed a portion of his deposition. Specifically, in the original version the Government deponent acknowledged that the area in which the accident took place was "designated a recreational area." He later corrected the deposition to say that it was not designated a "recreational area." Gard's attorneys claim that they did not know of this change until after reading the Government's briefs in this appeal.

Gard claims that this change was significant because *McGruder* means that "one of the elements of the test to establish willfulness is actual knowledge that the property is being used for recreational purposes." Aside from the impropriety of using *McGruder, see* part II *supra*, even if the deposition had not been amended, the Government deponent would simply have indicated that the area had been designated a recreational area. We are convinced that given the correctness of the district court's conclusion that there was no evidence of willfulness, it would not have changed the result whether the court considered the amended or unamended version of the deposition.