Olga JENNETT

v.

UNITED STATES of America.

Civ. No. N–77–283.

United States District Court, D. Connecticut.

Oct. 10, 1984.

Bernard Avcollie, Naugatuck, Conn., Theodore J. Wurz, Bristol, Conn., for plaintiff.

Thomas Riley, Asst. U.S. Atty., New Haven, Conn., for defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, District Judge.

In this action, the plaintiff has alleged that the negligence of employees of the United States Army Corps of Engineers caused the wrongful drowning death of her son, John I. Andrzywski. Jurisdiction is based on the Federal Tort Claims Act

("F.T.C.A."), 28 U.S.C. § 2674 *et seq.*, and 28 U.S.C. § 1346. Connecticut substantive law governs. 28 U.S.C. § 1346(b); *Maltais v. United States,* 439 F.Supp. 540, 550 (N.D.N.Y.1977).

The defendant has moved for summary judgment alleging there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. The parties have entered into a stipulation of facts which are or may be material to the issue of liability and which reads in relevant part as follows:

On May 22, 1974, the general Hop Brook Reservoir project area, consisting of 538 (fee) acres, was open to the public for hiking, picnicking, fishing, boating and similar recreational purposes, other than swimming. No fees were charged to the public for the use of the facilities for these purposes.

On May 22, 1974, swimming in the Hop Brook Reservoir was prohibited.

Prior to May 25, 1974, the official policy of the Corps of Engineers was to prohibit swimming in the Hop Brook Reservoir. Pursuant to this policy the Corps' Project Manager had instructed his staff to require anyone found swimming in the reservoir to leave the reservoir area immediately. The staff had done so on a number of occasions prior to May 22, 1974, and on May 22, 1974, prior to the drowning at issue here.

On or before May 22, 1974, there was a gate at the project entrance that was customarily opened at 8:00 a.m. and was closed at sundown. This gate was open at the time of the drowning at issue here.

On May 22, 1974, no person was assigned to be at the reservoir or on the beach for the full length of time during which the project was open. Rather, the Corps' personnel, who worked 8:00 a.m. to 4:30 p.m. Monday through Friday, periodically checked the reservoir and beach area. There was no specific schedule for these inspections.

At the time of the drowning at issue in this case, no Corps of Engineers' personnel or lifeguards were present at the reservoir. There also were no signs posted which prohibited swimming, no lifesaving equipment nor a public telephone in the immediate vicinity.

On May 22, 1974, at roughly 5:00 p.m. John I. Andrzywski, then 16 years of age, attempted to swim across Hop Brook Reservoir with several other individuals. ....

The group intended to swim from the beach side of the reservoir to the Middlebury side. At or near the midpoint of the swim Andrzywski called for help, indicating that he couldn't make it across. Several of his companions attempted to save him, but were unsuccessful. Andrzywski disappeared below the surface. All of his companions completed the swim to the Middlebury side of the reservoir.

After reaching the other shore, two of his companions got a ride to a nearby gas station and called the Middlebury Police at roughly 5:17 p.m.

The Middlebury Police and the Fire Department Rescue and Fire Department Ambulance crews responded to the scene. At roughly 6:00 p.m. the Fire Department members recovered the body of Andrzywski by means of a grappling hook lowered from a boat.

Efforts to resuscitate Andrzywski were unsuccessful. The medical examiner pronounced him dead at the scene.

On May 23, 1974, Dr. David M. Lowell, pathologist at Waterbury Hospital, confirmed that the cause of John I. Andrzywski's death was asphyxiation due to submersion, i.e. drowning.

Plaintiff in her brief has made several other factual claims. All are unsupported by affidavits or other competent evidence. They do not meet the requirements of Fed. R.Civ.P. 56(e) and are, therefore, insufficient to raise the possibility of any factual disputes.

Defendant premises its disclaimer of liability on the provisions of Conn.Gen.Stat. § 52–557g, which, at the time of this tragic accident, stated in relevant part:

**112**

(a) Except as provided in § 52–557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for such purposes.

(b) Except as provided in § 52–557h, an owner of land who, either directly or indirectly, invites or permits without charge, rent, fee or other commercial service any person to use the land, or part thereof, for recreational purposes does not thereby: (1) make any representation that the premises are safe for any purpose; (2) confer upon the person who enters or uses such land for recreational purposes the legal status of an invitee or licensee to whom a duty of care is owed; or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of the owner.[1]

Defendant claims that because plaintiff's decedent paid no fee for the use of the Hop Brook Reservoir and was engaged in a recreational activity in an area open to the public for recreational purposes, § 52–557g applies and it owed no duty of care to him. The plaintiff has admitted that, if § 52–557g does so apply, her cause of action is barred.

The question whether the statute applies is a matter of law and, since no genuine issue of material facts relevant to this determination exists, summary judgment is appropriate. The court agrees with the defendant's interpretation and thus grants defendant's motion for summary judgment.[2]

### DISCUSSION

The plaintiff's argument focuses on the fact that at the time of the drowning swimming was prohibited. She maintains that because none of the land was open to the public for the recreational purpose of swimming, Connecticut's recreational use statute does not relieve the United States of liability in this case. Thus, plaintiff continues, the decedent was a licensee or invitee and as such was owed the duty of reasonable care.

At the outset, the court notes that the applicability of § 52–557g is not affected because the landowner in this case is the United States government. The principle of encouraging landowners to open up their land by limiting potential tort liability applies with equal force to the Government as to other landowners. *Gard v. United States,* 594 F.2d 1230, 1233 (9th Cir.1979), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979).

The language of the Connecticut statute does not define the protection it affords landowners in terms of the type of recreational activity. The statute does not limit the recreational purpose to *permitted* recreational uses. It is beyond question that swimming is a "recreational purpose", as it is specifically defined as such in § 52–557f(4). The only limitation expressed within the statute is that if a landowner opens only a *part* of his land to the public, he then owes no duty of care to others only for that geographical part so made available.

---

**1.** Section 52–557h states two exceptions to the immunity from liability granted under § 52–557g: if there is a wilful or malicious failure to warn or guard against a dangerous condition, use, structure or activity, or if the owner charges a fee for the use of the land. In the present case, the plaintiff has alleged neither exception, and the facts do not suggest that either exception applies. *See Gard v. United States,* 594 F.2d 1230 (9th Cir.1979).

**2.** The plaintiff also maintains there are fact disputes preventing the entry of summary judgment for defendant. These issues, such as notice and the presence of defendant's agents, would only be relevant if the court found the statute inapplicable and that the United States had some duty of care under common law. Because the statute applies, the court need not address those issues.

Plaintiff might prevail if the reservoir itself had not been open for use for any purpose whatsoever, with only the surrounding land open for hiking. Such was not the case, however. The lake was open for boating and fishing, also both recreational uses under § 52–557f(4).

The express language of § 52–557g is clear. Nowhere is there any indication that "made available ... for recreational purposes" should be read "made available for *permitted* recreational purposes". Indeed, subsection (b) indicates just the opposite. An owner who permits his land, or any part thereof, to be used for recreational purposes makes no "representation that the premises are safe for *any* purpose". § 52–557g(b)(1) (emphasis added). Nor does the owner "assume responsibility for or incur liability for *any* injury...." § 52–557g(b)(3) (emphasis added). The clearly expansive thrust of § 52–557g(b) undermines plaintiff's argument that a statute in derogation of the common law must be construed strictly. The court construes § 52–557g strictly and nonetheless finds that its protections encompass injuries incurred while using the land for a prohibited recreational purpose.

Nor is the Connecticut statute unique in the extent of its protections to landowners. *See, e.g., Russell v. Tennessee Valley Authority,* 564 F.Supp. 1043, 1047 (N.D.Ala. 1983) (17 year old injured while sliding down a dam spillway not intended for public use; plaintiff admitted he was using the spillway for recreational purposes; TVA not liable under Alabama statute similar to Connecticut statute); *Gard v. United States,* 420 F.Supp. 300 (N.D.Cal.1979) *aff'd* 594 F.2d 1230 (9th Cir.) *cert. denied* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). (While sightseeing on federal lands, plaintiff injured while exploring old mine; United States not liable under Nevada sightseer statute).

To hold that the Andrzywski drowning falls outside the statute would have the effect of discouraging landowners from opening their lands for any public use free of charge. It would require that a land-owner either open up his land for *all* purposes, or greatly increase the number of security personnel to ensure that only permitted uses occur in order to secure the protection of the statute.

The plaintiff's position would have the anomalous result that the United States would have no duty of care to keep the reservoir safe for permitted uses, but would have a higher duty of care to those who used the land for prohibited purposes. If the legislature had intended the statute to limit liability only for the specific activities permitted by the landowner, it could easily have used language to that effect.

The court therefore concludes that when the United States opened the Hop Brook Reservoir to boating and fishing on May 22, 1974, that geographic area was "made available" for use by others for recreational purposes. It incurred no liability for the drowning death of John Andrzywski that occurred while he was swimming in the reservoir.

## CONCLUSION

The plaintiff cannot recover damages because the Connecticut recreational use statute § 52–557g is applicable. The defendant's motion for summary judgment is granted.

Having found the government had no duty of care, it obviously cannot be found negligent, nor is it necessary to reach the issue of whether defendant's negligence *caused* the death of plaintiff's decedent.

Accordingly, judgment may enter for defendant.

SO ORDERED.