918 F.2d 834
 Earl Jay McMURRAY, a minor child, by and through his natural
parents, Barry McMurray and Kathy Ashbridge McMurray; Barry
McMurray; Kathy Ashbridge McMurray; William John
Ashbridge, a minor child, by and through his natural
parents, Barry McMurray and Kathy Ashbridge McMurray,
Plaintiffs-Appellees,
v.
UNITED STATES of America, et al., Defendant-Appellant.
 No. 88-1567.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 15, 1988.
Decided Nov. 9, 1990.
 
 Madelyn B. Creedon, Dept. of Justice, Washington, D.C., for defendant-appellant.
 Robert E. Heaney, Reno, Nev., for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before FERGUSON, BRUNETTI and LEAVY, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 The United States appeals from the district court's conclusion that it willfully failed to guard or to warn against a dangerous condition that existed on government land at the Lee Hot Springs area near Fallon, Nevada. Earl McMurray, a minor child, was severely burned when he fell or sat in a shallow stream that had a water temperature between 160 and 180 degrees Fahrenheit. Government liability was based on the Federal Torts Claim Act, 28 U.S.C. Sec. 1346(b), and the Nevada Recreational Use Statute, Nev.Rev.Stat. Sec. 41.510. We affirm.
 
 FACTS
 
 2
 Barry and Kathy McMurray are the parents of plaintiff-appellee Earl Jay McMurray. In 1983 the McMurrays camped for the Fourth of July weekend at Indian Lakes in the Stillwater area near Fallon, Nevada, an area they were unfamiliar with, having moved to Nevada from Oregon in April 1983. On July 2, 1983, Barry McMurray, his son Earl, aged two, and his stepson William, drove with Steve Rhyne and Steve's son Steve Jr. from Fallon to Shurz, Nevada, to purchase fireworks. On the return trip they decided to investigate an oasis-like area they had noticed from the highway. They followed a dirt road into the area that is known as Lee Hot Springs.
 
 
 3
 On July 2, 1983, Lee Hot Springs consisted of a small spring and pool with a narrow, shallow stream that flowed south into a marshy area that was vegetated with grass, brush, and a large tree. The reported temperature of the water flowing from the spring had ranged over the years from a low of 156 to a high of over 200 degrees Fahrenheit. On July 2, there were no signs identifying the area as a hot spring, nor were there fences or warnings of any kind. The Bureau of Land Management knew that the public had unrestricted access to the hot springs. Its failure to post the area with warning signs was in contravention of its stated policy to inform the public of natural hazards.
 
 
 4
 As they entered the area the adults in the vehicle observed a sign that read:
 
 
 5
 UNITED STATES DEPARTMENT OF THE INTERIOR--BUREAU OF LAND
 
 
 6
 MANAGEMENT ENTERING PUBLIC LANDS--HELP MAINTAIN
 
 YOUR PROPERTY
 
 7
 Concluding that the area was safe, the McMurrays and Rhynes departed from their vehicle. Barry McMurray followed what appeared to be a foot path that crossed the stream, which was approximately twelve inches wide and four to six inches deep. Although the stream was then flowing at a temperature of between 160 and 180 degrees Fahrenheit, the high temperature was not apparent to the casual observer. There was no steam, hissing, or odor that would put a visitor on notice that he had encountered a hot spring. Barry noticed the pool to his left, which was thirty to forty feet across, and instructed Earl, who was tagging along behind, to stay away from it. Barry then proceeded to a nearby bush to relieve himself. Earl ventured to the stream. At that point he either fell or sat in the water, and he immediately suffered extensive second and third degree burns to his body from the waist down.
 
 
 8
 Earl's parents brought suit against the United States under the Federal Torts Claim Act, which holds the government liable to the same extent that a private person would be liable under similar circumstances. Applying Nevada's recreational use statute, the district judge found the government guilty of a willful failure to guard or warn against a dangerous condition and awarded the plaintiff and his family $718,029.00. The United States appeals.
 
 STANDARD OF REVIEW
 
 9
 The district court's construction of state law under the Federal Torts Claim Act is reviewed de novo. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). We interpret the meaning of the term "willful failure to guard or warn" in the Nevada Recreational Use Statute as we believe the Supreme Court of Nevada would. See Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482, modified on rehearing, 810 F.2d 1517 (9th Cir.1987).
 
 DISCUSSION
 
 10
 Under the Federal Torts Claim Act, suits against the United States are governed by the substantive law of the place where the act or omission complained of occurs. 28 U.S.C. Sec. 1346 (1988). Earl McMurray's injuries occurred in Nevada; thus, Nevada law governs. The McMurrays sued under Nevada's Recreational Use Statute, Nev.Rev.Stat.Ann. Sec. 41.510 (1986). It provides, in pertinent part:
 
 
 11
 1. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for crossing over to public land, hunting, fishing, trapping, camping, hiking, sightseeing, or for any other recreational purposes, or to give warning of any hazardous condition, activity or use of any structure on the premises to persons entering for those purposes, except as provided in subsection 3.
 
 
 12
 ....
 
 
 13
 3. This section does not limit the liability which would otherwise exist for:
 
 
 14
 (a) Willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity.
 
 
 15
 This statute immunizes landowners from liability unless they have willfully or maliciously failed to warn or guard against a dangerous condition. Both parties agree that Lee Hot Springs was a dangerous condition that the government failed to warn the public of. The only question on appeal is whether the government's failure to warn was willful within the meaning of Sec. 41.510.[1]
 
 
 16
 At trial, the government argued that under Nevada law, willfulness requires a showing of a specific intent to cause harm, citing Crosman v. Southern Pacific Co., 44 Nev. 286, 194 P. 839 (1921). The district court rejected this definition of willful and applied a more lenient standard. The court ruled that the Nevada Supreme Court in Davies v. Butler, 95 Nev. 763, 602 P.2d 605 (1979), had modified the Crosman definition of willful to remove the intent to injure requirement. Applying the Davies standard, the court correctly concluded that the government willfully failed to post a sign at Lee Hot Springs.
 
 
 17
 In Crosman, the Nevada Supreme Court defined "willful conduct" as requiring a "design, purpose and intent to injure." Crosman, 194 P. at 843. We applied this definition of willful conduct to the Nevada Recreational Use Statute in Gard v. United States, 594 F.2d 1230 (9th Cir.), cert. denied, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). The plaintiff in that case was injured when he fell down an abandoned mine shaft on land owned by the United States, while engaged in "sightseeing" and "recreational" activities and had not received permission from the United States to enter the mine. Id. at 1232. In Gard, we found that in order to collect damages under NRS Sec. 41.510, a plaintiff must "show that a federal employee willfully or maliciously failed to guard or warn against the danger presented...." 594 F.2d at 1233 (quoting 420 F.Supp. 300, 302 (N.D.Cal.1976)). Again, quoting the Gard district court we said "the Nevada legislature clearly envisioned limiting liability under its statute to landowners who intentionally allow dangerous structures to remain unguarded and without warning, with the knowledge that someone will be injured." 594 F.2d at 1233 (quoting 420 F.Supp. at 302) (emphasis supplied).
 
 
 18
 In Gard, employing the Nevada definition of "willful" we declined to find the United States liable for plaintiff's injuries because there was "no evidence that any employee of the United States had ever inspected the mine." The district court found that the undisputed facts of the case failed to show that the United States or any of its employees willfully or maliciously failed to guard or warn against the mine shaft that caused the injuries, and that there was no evidence that any employee of the United State had ever inspected the mine. An affidavit submitted to the Gard district court by a Bureau of Land Management engineer stated that "in the ten years he has overseen the Bureau's mineral management program in Nevada, he has never noticed any activity or persons in the vicinity of the two mines involved here, has never received any other expression of concern about the mine's safety from members of the public or federal employees, and has never heard of any other accident involving either mine." Id. (quoting 420 F.Supp. at 302).
 
 
 19
 The Nevada Supreme Court has, however, modified the definition of willful conduct since Gard was decided.[2] In Davies v. Butler, 95 Nev. 963, 602 P.2d 605, the Nevada Supreme Court addressed the issue of what constitutes willful conduct. The court approved the following jury instruction for willful or wanton misconduct. "Willful or wanton misconduct is intentional wrongful conduct, done either with knowledge that serious injury will probably result, or with a wanton or reckless disregard of the possible results." Id. 602 P.2d at 609. Davies thus modifies the Crosman definition of willful misconduct by deleting the intent to injure requirement, defining it as intentional wrongful conduct done with the knowledge that serious harm to another will probably result. Id. See also Van Cleave v. Kietz-Mill Minit Mart, 97 Nev. 414, 633 P.2d 1220, 1221 (1981) (willful misconduct described as an act " 'that the actor knows, or should know, will very probably cause harm' ") (quoting Rocky Mountain Produce v. Johnson, 78 Nev. 44, 369 P.2d 198, 202 (1962); Bell v. Alpha Tau Omega Fraternity, 98 Nev. 109, 642 P.2d 161, 162 (1982) ("Willful misconduct requires a consciousness that one's conduct will very probably result in injury").[3]
 
 
 20
 The district court correctly applied the Davies definition of willful in this case, holding that the government consciously failed to post a sign at Lee Hot Springs despite its knowledge of the danger of persons being burned presented by this spring. This constitutes a willful failure to warn under Nevada law. See Davies, 602 P.2d at 609.
 
 
 21
 AFFIRMED.
 
 LEAVY, Circuit Judge, dissenting:
 
 22
 I dissent from the majority's conclusion that "the Nevada Supreme Court has modified the definition of wilful conduct."
 
 
 23
 The Nevada Supreme Court carefully defined and distinguished the concepts "wilful" and "wanton" in Crosman v. Southern Pac. Co., 44 Nev. 286, 194 P. 839 (1921) and Rocky Mountain Produce Trucking Co. v. Johnson, 78 Nev. 44, 369 P.2d 198 (1962). We followed the Crosman definition in Gard v. United States, 594 F.2d 1230 (9th Cir.1979). Davies v. Butler, 95 Nev. 963, 602 P.2d 605 (1979), was decided by the Nevada Supreme Court a few months after Gard. In Davies, the trial court instructed the jury that " '[c]ontributory negligence if any, on the part of the decedent does not reduce any recovery by the plaintiffs ... against a defendant for an injury caused by misconduct of a defendant if you find that the defendant intended to inflict harm upon the decedent.' (Emphasis added.)" Davies, 602 P.2d at 609. The court found the instruction to be erroneous and approved the following requested instruction:
 
 
 24
 Contributory or comparative negligence of the decedent is not a bar to recovery for any injury or damage caused by the wilful or wanton conduct of a defendant.
 
 
 25
 Wilful or wanton misconduct is intentional wrongful conduct, done either with knowledge that serious injury to another will probably result, or with a wanton or reckless disregard of the possible results. (Emphasis added.)
 
 
 26
 Davies, 602 P.2d at 609.
 
 
 27
 For the purpose of discussing contributory or comparative negligence it is sufficient to lump the definition of wilful and wanton together as was done in the instruction. Neither wilful nor wanton is defined in the instruction but instead the phrase "wilful or wanton" is defined. I am not at all satisfied that the definition of two words in the alternative can be treated as a definition of each individual word. The Davies court observed "[i]t has long been the rule in this jurisdiction that contributory negligence is not a bar to recovery for injury or damage caused by the willful or wanton misconduct of a defendant. Rocky Mt. Produce v. Johnson, 78 Nev. 44, 369 P.2d 198 (1962); Crosman v. Southern Pac. Co., 44 Nev. 286, 194 P. 839 (1921)." Davies, 602 P.2d at 609.
 
 
 28
 I find it noteworthy that no effort was made by the Nevada Supreme Court to overrule or distinguish either Rocky Mountain or Crosman. The supreme court went on to observe:
 
 
 29
 We agree with the appellants that, read in light of our previous decisions carefully delineating the concepts of willful and wanton misconduct, the legislature intended to leave such behavior outside the purview of the comparative negligence statute.
 
 
 30
 Id. at 610.
 
 
 31
 As with Davies, the Van Cleave v. Kietz-Mill Minit Mart, 97 Nev. 414, 633 P.2d 1220 (1981), decision did not need to make a distinction between "wilful" and "wanton." It needed only to describe the minimal behavior that would present a genuine issue of material fact to overcome a motion for summary judgment. There are similar circumstances in Bell v. Alpha Tau Omega Fraternity, 98 Nev. 109, 642 P.2d 161 (1982). At issue were the proper jury instructions. The Nevada Supreme Court gave a description of "wanton" when it said: "[w]illful misconduct requires a consciousness that one's conduct will very probably result in injury." Bell, 642 P.2d at 162. I think the choice of the word "willful" was unfortunate, but all that was necessary to know was the least conduct that could overcome a motion to dismiss. I do not think we can imply a desire by the Nevada Supreme Court to change concepts it previously had so meticulously defined through the improvident choice of a word.
 
 
 
 [1]
 The McMurray's did not allege that the government's failure to warn was malicious
 
 
 [2]
 We note it is quite likely that even without the change in Nevada's definition of "willful," the outcome of this case, as opposed to Gard, should be a finding of liability on the part of the U.S. Unlike in Gard, the district court here found "impressive evidence that the BLM had actual knowledge of Lee Hot Springs and its dangerous temperature." (Memorandum Opinion at 2). The BLM (a) was aware that the public had unrestricted access to the springs; (b) was on notice of other persons burned by the hot water at this and other similar hot springs; and (c) actually welcomed the public to the site. Id
 The facts here are sufficiently distinguishable from those in Gard that even without the change in Nevada law the United States may be said to have "willfully failed to guard, or to warn" against this dangerous condition.
 
 
 [3]
 This definition of willful is consistent with the Nevada Supreme Court's recent decision in Craigo v. Circus-Circus Enterprises, Inc., 786 P.2d 22 (Nev.1990). In Craigo, the court held that punitive damages based on malice may only be awarded where the wrongful conduct is done with "the deliberate intent to injure." Id. at 26
 Nevada's Recreational Use Statute imposes liability for a "willful or malicious" failure to warn or guard against dangerous conditions. Nevada law states that "no part of a statute should be rendered nugatory nor any language turned to mere surplusage, if such consequences can properly be avoided." One 1978 Chev. Van v. County of Churchill, 97 Nev. 510, 634 P.2d 1208, 1209 (1981) (internal quotations and citations omitted). In light of Craigo 's definition of malice, interpreting willful as requiring a specific intent to injure would render the term malice in the Recreational Use Statute "mere surplusage." Therefore, our holding that wilful conduct under Nevada law does not require an intent to injure is consistent with the Nevada Supreme Court's most recent opinion discussing these standards of conduct.