**UNITED STATES of America, Plaintiff,**

v.

**CURTIS–NEVADA MINES, INC., and Robert Curtis, Defendants.**

**Civ. No. S–75–160.**

United States District Court,
E. D. California.

May 14, 1976.

Dwayne Keyes, U. S. Atty., Bette Wolfe, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

Charles Dresow, San Francisco, Cal., and Leslie M. Fry, Fry & Fry, Reno, Nev., for defendants.

MacBRIDE, Chief Judge.

## MEMORANDUM

The cross motions for summary judgment in this case arise out of a dispute between the Government and the defendants regarding the proper use of the sur-

face area of unpatented mining claims. The defendants are Curtis-Nevada Mines, Inc., a Nevada mining corporation, and Robert Curtis, the corporation's president. The mining claims in question here are located in Mono County, California, in Township 9N, Range 23E, M.D.M. Certain portions of the claims lie within Tioyabe National Forest, and are administered by the National Forest Service. Those portions of the mining claims that are not in the National Forest are "Public Domain" land, and are administered by the Department of Interior Bureau of Land Management. Jurisdiction is proper in this case pursuant to Title 28 U.S.C. § 1345 which provides that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States."

The law regarding persons allowed to use the surface areas of unpatented mining claims, when those areas are not being used for actual mining, is contained in Title 30 U.S.C. §§ 611–615. Unfortunately, the relevant language of these sections is ambiguous. The Government and the defendants offer differing interpretations of these sections, and the parties' and our own research indicates that this is a case of first impression for the courts of this country. Therefore, the court will be relying basically on legislative history, since, when "it cannot be said that the language is unambiguous . . . we turn to legislative history." *The Colony, Inc. v. Commissioner*, 357 U.S. 28, 33, 78 S.Ct. 1033, 1036, 2 L.Ed.2d 1119, 1123 (1958); see also *Greyhound Corp. v. United States*, 495 F.2d 863 (9th Cir. 1974). The court will also look to the relevant administrative agency rulings as persuasive since:

> "The construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong."

*Red Lion Broadcasting Co. v. F. C. C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, 383 (1969); see also *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

The issues in this case will be addressed in the following order:

1. Whether this is a proper case for summary judgment.
2. Whether the proper construction of Title 30 U.S.C. §§ 611–615 allows the holder of an unpatented mining claim to exclude all members of the public except government agents, from the surface area of the mining claim.
3. Whether it is proper to issue an injunction ordering the holder of an unpatented mining claim to cease mining operations until there is compliance with 36 CFR Part 252 which requires the filing of a mining operations plan.
4. Whether it is proper to order the holder of an unpatented mining claim to file an operations plan for the benefit of Bureau of Land Management.
5. To which party shall costs be awarded.
6. Whether the defendants should be enjoined from using guards and barricades which block access to the claims.

## SUMMARY JUDGMENT

██ Federal Rule of Civil Procedure 56 sets out the requirements for summary judgment. 56(c) provides that a summary judgment is proper when there are no material facts at issue.

> "The real function of summary judgment procedure is to go beyond the pleadings and present matters by affidavit, depositions, admissions, answers to interrogatories, or other extraneous materials for the purpose of showing that despite issues of fact raised by the pleadings there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Moore's Federal Practice* ¶ 56.09, pp. 2122–2123.

The following facts are agreed to by both parties, either in the pleadings, depositions, or affidavits: The defendants prevent members of the general public from using the surface areas of its unpatented mining

claims for either recreation purposes or access to adjoining land. There are two roads which cross portions of the defendants' mining claims, Blackwell Canyon Road, and Rickey Canyon Road. All parties agree that at least Rickey Canyon Road gives access to adjoining land, and that while Blackwell Canyon Road may not be passable to vehicle traffic, the end of the road comes within two miles of adjoining land. The defendants have, at various times erected barriers or gates to block the public, including licensed hunters, from using the surface of the claim. Also, guards have been used to prevent the public from entering or using the claims to gain access to adjoining land, and at least on one occasion one of the guards was armed. The defendants admit, in deposition and affidavit, that only government agents or government licensed woodcutters are allowed access to the land. Finally, defendants admit failing to file the operations plan and environmental study required by 36 CFR Part 252.

There are cross motions for summary judgment in this case. Despite the fact that when a party moves for summary judgment he is alleging that there are no material facts at issue, it does not follow that if both parties move for summary judgment they agree that there are no material issues of fact.

> "Cross motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Moore's Federal Practice* ¶ 56.13, p. 2247.

See also *Pioneer National Title Insurance Co. v. American Casualty*, 459 F.2d 963, 967 (5th Cir. 1972); *American Manufacturers Mutual v. American Broadcasting-Paramount Theatres*, 388 F.2d 272 (2nd Cir. 1968). However, in this case, there are no material facts still in issue, and the decision will rest on the construction of the applicable law. Therefore, the court finds that this is an appropriate case for summary judgment.

## CONSTRUCTION OF TITLE 30 U.S.C. §§ 611–615.

Title 30 U.S.C. §§ 611–615 deal in general with the rights and duties of owners of unpatented mining claims, and with the extent of government control of those claims. The relevant portions in this case, which deal with the use of the surface area of unpatented mining claims, are contained in § 612(b):

> "Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof (except mineral deposits subject to location under the mining laws of the United States). Any such mining claim shall also be subject, prior to issuance of patent therefor, to the right of the United States, its permittees, and licensees, to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land: *Provided, however,* That any use of the surface of any such mining claim by the United States, its permittees or licensees, shall be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto. . . ."

Sections 611–615 were passed by the 84th Congress as P.L. 167. The section quoted above was a portion of § 4(b) of P.L. 167, and is referred to as such in the Congressional hearings, Congressional reports, and in the administrative opinions.

The clear import of § 612(b) is obscured because there is no definition of the meaning of the phrases, "other surface resources" or "permittees and licensees." If "other surface resources" include recreation such as hunting, fishing, and camping, then it appears that the United States and its "permittees and licensees" could use the surface areas of unpatented mining claims for those purposes. However, the recreation would be limited to those people who

could qualify as United States "permittees and licensees." The defendants claim that "permittees and licensees" are merely government agents and government licensed woodcutters who are engaged in managing the surface areas of the claims. The defendants assert that this does not include members of the general public engaged in general recreation. The Government claims that "permittees and licensees" read together with "other surface resources" means that the general public has the right to use the surface areas of unpatented mining claims for recreational purposes and access to other land, so long as there is no material interference with the mining operations. The construction of these two ambiguously worded phrases will control this case.

ADMINISTRATIVE OPINIONS

There are three administrative opinions which have attempted to construe § 612(b) (P.L. 167 § 4). The first was the Department of Interior memorandum number M–36389, authored by the Associate Solicitor, Division of Public Lands. It was dated December 7, 1956, and was entitled,

"Effect of Public Law 167, 84th Cong., on the use of the surface of unpatented mining claims for recreational purposes and for access to adjacent lands."

The second opinion was a Department of Interior memorandum, authored by a Field Solicitor: It was dated June 1, 1972, and was entitled,

"Rights of general public to use the surface of unpatented mining claims located after July 23, 1955, for hunting purposes and for access to adjacent lands."

The third opinion was a Department of Interior memorandum, authored by an Associate Solicitor. It was dated July 2, 1974, and was entitled,

"Effect of the Act of July 23, 1955, (30 U.S.C. §§ 611–615), often called Public Law 167, on use of surface of mining claims."

The first opinion concludes that, "the act, of itself, does not open those areas to the use of the general public for recreational purposes." The Associate Solicitor thought that,

"The surface of the mining claims subject to the act are not thereby opened to use by the general public as an access route to adjacent lands for recreational purposes."

The opinion stated that while the act itself did not authorize the public to use the land, it did not abridge any use that the general public had of the land prior to the act.

The second opinion held that, "the general public has no right to hunt on mining claims without the claimant's consent." This opinion relied on the first opinion to the extent that it mentions that if a government agency, which had the right to control the surface of the land, issued licenses to individuals, those licensed individuals would have a right to use the surface area. However, the Field Solicitor indicated that the act itself did not give that authority to any agency that did not have it already.

The third opinion states that the Department of Interior Bureau of Land Management has the "authority to open public lands to recreational purposes including hunting and fishing." The Associate Solicitor concluded that:

"the 1955 Act should at all times be interpreted to allow those who are acting in good faith under appropriate regulations of the Department to enter for recreational purposes upon those portions of a claim that are not actively used by the claimant."

This would mean that any member of the public who entered an unpatented mining claim under regulation of the Department of Interior would be a "permittee."

These three opinions are not entirely consistent. While the second opinion expressly concludes that hunting is not permitted under the Act, the two other opinions indicate that hunting would be allowed if done pursuant to regulations from a proper administrative authority. However, while the third opinion concluded that the Bureau of Land

Management was the proper authority, the first opinion stated that the Bureau was not empowered by the Act to open the mining claims for recreation. The only conclusion that can be drawn is that there is no clear administrative mandate regarding the ambiguous sections of § 612(b).

## LEGISLATIVE HISTORY

The Congressional reports which accompanied P.L. 167 did not really address themselves to the particular issues involved in this case. There is broad language in the reports which indicate that one of the purposes of the Act was the,

> "Conservation of surface resources such as water, soil, grass, timber, parks, monuments, recreation areas, fish, wildlife, and waterfowl."

House Report No. 730 in *U. S. Code Congressional and Administrative News* 84th Congress, 1st Sess. at 2475 (1955). However, this language does not really help to construe the language of the section to determine the extent of use for the public.

The Senate hearings on P.L. 167 do provide help in eliciting the Congressional intent of the Act. In hearings conducted before the Senate Interior and Insular Affairs Committee of the 84th Congress the exact meaning of § 4(b) was discussed. One of the Senators stated that the purpose of the Act was to provide,

> "The broadest possible use of the resources of our public domain, national forests, and mineral deposits for the general benefit of the people of this country." at p. 14.

This statement was indicative of the concern that most of the Senators expressed in the hearings, namely the widest possible use of Public Domain land consistent with mining operations.

■ At one point in the hearings, Senator Bible expressed concern about the scope of the portion of § 4(b) which dealt with, "the right of the United States, its permittees, and licensees, to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land."

On page 133, Senator Bible asked whether a fisherman, with a fishing license issued by *either* a state or federal agency, could enter an unpatented mining claim that had a "no trespassing" sign on it. The Senator stated that,

> "The only purpose of my question was to determine . . . if . . . Section 4 did permit the fisherman to go to the stream under those circumstances. *I understand [the] answer to be yes.*" at p. 135 (emphasis added).

From the general statements made in these hearings, and from these specific references made by Senator Bible, this court holds that there is an ascertainable intent of Congress manifested in the phrases "other surface resources" and "permittees and licensees." Therefore, this Court holds, consistent with the Congressional intent, that any member of the public, who possesses a license or permit from any state or federal agency which allows that person to engage in any form of recreation on public land, including National Forests, can enter onto the surface of unpatented mining claims in order to engage in that recreation, or to gain access to another area to engage in that recreation, so long as there is no interference with ongoing mining operations. In the hearings, examples were given such as hunting, fishing, or camping permits. These, however, are merely illustrative, not exclusive.

## OPERATIONS PLAN

Title 36 CFR Part 252 was promulgated by the Secretary of Agriculture pursuant to provisions in Title 16 U.S.C. § 478 and § 551. The purpose of these regulations is to set forth rules and procedures for the use of the surface areas of unpatented mining claims in *National Forest areas.* These procedures are supposed to help minimize the environmental impact of mining.

■ The provision of Part 252 which concerns this case is the requirement that anyone mining on an unpatented mining claim

must file an operations plan. This plan must include, among other things, "a map or sketch showing information sufficient to locate the proposed area of operations on the ground." at § 252.4. The Government contends that if defendants file this sort of report, the agencies which issue recreation permits will be able to inform the permittees where they will be allowed to go. This Court feels that this position is reasonable and is consistent with Title 30 § 612(b) which requires that recreational use of the surface areas of unpatented mining claims not interfere with the mining itself.

If the defendants indicate where they will be operating, it will give the "permittees and licensees" help in determining where they may go. Therefore, this Court holds that the defendants should be enjoined from conducting mining operations on their unpatented claims until such time as they comply with the regulations set forth at 36 CFR Part 252.

## OPERATIONS PLAN—BUREAU OF LAND MANAGEMENT

The Government has also asked that the Court order the defendants to file an operations plan with the Bureau of Land Management. However, the Bureau of Land Management is not entitled to such a report under 36 CFR Part 252 because it does not administer National Forest land. The Government alleges that furnishing the Bureau of Land Management with an operations report would help open up the mining claims to recreational use. This is most likely true, but while the Court is willing to order the defendants to comply with the above CFR regulations, the Court will not put the additional burden of filing another report upon the defendants when such a report is not required by government regulation. When Congress thinks such a report is necessary, it will empower the proper administrative officer to require it through CFR regulations. Therefore, the Govern-

ment's request for an injunction against the defendants, until an operations report is filed with the Bureau of Land Management is filed, should be denied. Accordingly, the defendants' motion for summary judgment on this issue is granted.

## COSTS

█ Federal Rule of Civil Procedure 54(d) states in pertinent part that,

"Costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States . . . shall be imposed only to the extent permitted by law."

Title 28 U.S.C. § 2412 states that costs can be allowed against the United States in any civil action by or against the Government. In this case, the court is granting a portion of each side's request for summary judgment. Therefore, each party prevails to a certain extent and loses to a certain extent. Under the circumstances, since "the district court [has] sound discretion over the allowance, disallowance, or apportionment of costs in all civil actions," (Moore's Federal Practice ¶ 54.70[5], p. 1312), the Court will not award costs to either side.

## THE USE OF GUARDS AND BARRICADES

█ The Government has asked that defendants be enjoined from using all guards and barricades on the unpatented mining claims. The Court feels that if the defendants wish to maintain guards who will check whether members of the public have proper hunting, camping, or hiking permits, for example, they may do so. However, unmanned gates or barricades which would effectively block entrance to the land, or access to adjoining land, will not be allowed.[1] The defendants can only use barricades if they have personnel available ready to remove the barricade should the person requesting admittance have a proper permit.

---

1. The Court does not address the issue of whether the holder of an unpatented mining claim has the right to place a fence around the entire claim.

ORDER

IT IS THEREFORE ORDERED that summary judgment be and is hereby granted as follows:

1. Defendants are enjoined from preventing any member of the general public from entering onto the surface area of their unpatented mining claims, provided that such person is entering to engage in recreation or to gain access to adjoining land, and that such person possesses a valid recreation license or permit from any state or federal agency.

2. Defendants are enjoined from conducting mining operations on their unpatented mining claims until such time as they file the proper reports pursuant to 36 CFR Part 252.

3. The Government's request to have the defendants file an operations plan with the Bureau of Land Management is denied.

4. All requests for costs are denied.

5. Defendants are enjoined from using unmanned barricades or gates which would effectively block entrance to the unpatented mining claims or access to adjoining land. The defendants can only use gates or barricades if they have personnel available ready to remove the barricade should the person requesting admittance have a proper permit.

6. The Government's request to enjoin the defendants from using guards or manned gates is denied.