**In re ALVES PHOTO SERVICE, INC., Debtor.**

**Paul Mark RYAN, as Trustee of the Rachael L. Wrightson Present Interest Trust, Plaintiff,**

**v.**

**Frederick T. HERSEY, as Trustee of Alves Photo Services, Inc., Defendant.**

**Paul Mark RYAN, as Trustee of the Amy Helen Wrightson Present Interest Trust, Plaintiff,**

**v.**

**Frederick T. HERSEY, as Trustee of Alves Photo Services, Inc., Defendant.**

Bankruptcy No. 80–00831–JG.
Adv. Nos. A80–0548, A80–0549.

United States Bankruptcy Court,
D. Massachusetts.

Jan. 30, 1981.

Dennis I. Greene, Mintz, Levin, Cohn, Glovsky & Popeo, Boston, Mass., for plaintiff.

Robert Somma, Goldstein & Manello, Boston, Mass., for defendant.

MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

These adversary proceedings were initiated by the trustee of the Rachael L. Wrightson Present Interest Trust and the Amy Helen Wrightson Present Interest Trust against the trustee of Alves Photo Services, Inc., a Chapter 11 debtor. The plaintiffs sought, *inter alia*, a determination that the Wrightson Trusts were the legal and equitable owners of certain photofinishing equipment, that said Trusts had entered into lease agreements with the debtor corporation and that plaintiffs were entitled to relief from the automatic stay provisions of 11 U.S.C. Section 362(a) to terminate the leases and retake possession of the equipment.

The dispute involves the nature and effect of the transactions entered into between the parties. The debtor maintains that the "Leases of Equipment" agreements constitute conditional sales agreements and are alternate forms of financing arrangements. Cross-motions for summary judgment have been filed on the issue of

whether the agreements constitute leases or conditional sales.

The parties have filed the following agreed statement of facts:

1. On or about July 10, 1978, Ryan purchased certain photofinishing equipment ("Equipment") pursuant to the selections of and after negotiations between the vendor and the debtor.

2. On August 1, 1979, Ryan and the Debtor entered into two distinct Agreements entitled "Lease of Equipment", copies of which are attached as Exhibits A & B.

3. Ryan filed financing statements in respect of the Equipment transferred pursuant to each of the Leases of Equipment and his interest therein with the City Clerk of Braintree, Massachusetts on September 10, 1979 and with the Secretary of State of Massachusetts on September 12, 1979.

The only other evidence before the court is the Lease Equipment agreements themselves. No further facts have been stipulated to and no affidavits have been introduced.

The Lease Agreements provide for an eight year rental term with a monthly rental amount as designated for each piece of equipment. The lessee is granted an option to buy for a stated amount—said option to be exercised in writing thirty days before the expiration of the rental period. According to the terms of the agreement, the lessee is not to permanently alter the equipment. The obligation to pay all taxes[1], obtain all permits and licenses, pay all fees, freight, packing, insurance and handling charges is upon the lessee. Further, the lessee is to indemnify the lessor for any injury, damage or loss, and to defend against any actions, including claims for personal injury. The lessee has an affirmative duty to maintain said equipment and upon default is liable for all payments through the end of the term. Title is to remain in the lessor, who is not liable for failure of the equipment to operate.

The lease itself provides the court with the following additional facts:

1. the total lease rental payments stated are $144,000.

2. the buy-back option price is $9,437.80, which is approximately 6.6% of total rental payments.

However, the court has no evidence as to the original cost of the equipment or its fair market value at the expiration of the lease term.

A determination of whether the Lease Agreements are "pure" leases or are intended as security, and therefore controlled by the provisions of Article 9 of the Uniform Commercial Code (U.C.C.), Chapter 106 of the Massachusetts General Laws, depends upon the intention of the parties as determined by the facts of each case.[2] Specifically, the U.C.C. provides that "(a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration does make the lease one intended for security." U.C.C. Section 1–201(37).

Although courts have considered a myriad of factors in determining whether leases were intended as security,[3] proviso (b) above appears to this court to be a clearly determinative factor. *In re Joe Necessary and Son, Inc.*, 27 UCC Rep. 551 (W.Va. 1979); *In re Samoset Association*, 24 UCC Rep. 510 (Me.1978); *Citi Corp. Leasing, Inc. v. Allied Institutional Distributors, Inc.*, 24 UCC 1290, 454 F.Supp. 511 (W.D.Okl.1977);

---

1. Including sales and use taxes.

2. M.G.L. Ch. 106, Section 1–201(37).

3. *All-States Leasing Co. v. Ochs*, 27 UCC Rep. 808, 600 F.2d 899 (Or.App.1979); *In re Parts Unlimited Camera, Inc.*, 1 BCD 785 (D.N.J. 1975); *In the Matter of Consolidated Motor Inns*, 1 BCD 1526 (N.D.Ga.1975); *Uniroyal Inc. v. Michigan Bank, N. A.*, 12 UCC Rep. 745 (Mich. Cir. 1972); *In re Alpha Creamery Co., Inc.*, 4 UCC Rep. 794 (W.D.Mich.1967); *In re Transcontinental Industries*, 3 UCC Rep. 235 (N.D.Ga.1965).

*In re Consolidated Motor Inns*, 1 BCD 1526 (N.D.Ga.1975).

■ The court, however, has no evidence before it from which it can determine the fair market value of the equipment at the expiration of the lease term or whether, in fact, the stated buy-back price may be deemed to be nominal. Furthermore, there is no basis for a determination as to the anticipated useful life of the equipment, the cost and expense involved in its removal and return to the lessors, its value to the lessor upon its return compared with its functional value to the lessee or whether the lessor was acting primarily as a financing agent, principally concerned with being adequately secured.

Consideration of the above factors lead this court to the conclusion that there remain genuine issues as to a number of material facts.

Bankruptcy Rule 756 and Rule 56(c) of the Federal Rules of Civil Procedure establish a bifurcated standard to govern summary judgment motions. Specifically, the court shall render judgment if:

1. there is no genuine issue as to any material fact, and

2. the moving party is entitled to judgment as a matter of law. See also: *Arenas v. U. S.*, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363 (1944); *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

The First Circuit has clearly held that even where both parties move for summary judgment, the court may deny the motions where there exists an outstanding issue of material fact. *Ramsay v. Cooper*, 533 F.2d 237 (1st Cir. 1977); *Bromley-Heath Modernization Committee v. Boston Housing Authority*, 459 F.2d 1067 (1st Cir. 1972).

■ Cross-motions for summary judgment alone, do not establish that either party is entitled to relief. *Allen v. Beneficial Finance Co.*, 393 F.Supp. 1382 (D.C.Ind. 1975) aff'd. 531 F.2d 797, cert. denied 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166; *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount*

*Theatres, Inc.*, 388 F.2d 272 (N.Y.1967), on remand 45 F.R.D. 38, appeal after remand 446 F.2d 1131, cert. denied 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752; *U. S. v. Curtis Nevada Mines, Inc.*, 415 F.Supp. 1373 (D.C. Cal.1976).

Based on the reliable evidence before the court, the pleadings present an irreconcilable conflict of material facts and are found not to be susceptible to resolution by summary action. Accordingly, the motions for summary judgment are denied.