In re MOHAWK INDUSTRIES,
INC., Debtor.

MOHAWK INDUSTRIES,
INC., Plaintiff,

v.

CONNECTICUT SEWING MACHINE &
SUPPLY COMPANY, Defendant.

**Bankruptcy No. 4–84–00025–G.
Adv. No. 4–84–0026.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 9, 1985.

Philip J. Hendel, Hendel, Collins & Stocks, Springfield, Mass., for plaintiff/debtor Mohawk Industries, Inc.

James G. Verrillo, Zeisler & Zeisler, Bridgeport, Conn., for defendant Connecticut Sewing Machine & Supply Co.

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

PAUL W. GLENNON, Bankruptcy Judge.

Before the Court is a motion for summary judgment filed by the debtor, Mohawk Industries, Inc. ("Mohawk" or "debtor"), the plaintiff in the above adversary proceeding. The debtor filed a complaint for declaratory judgment asking the Court to declare that the defendant, Connecticut Sewing Machine & Supply, Inc. ("Connecticut") has an unperfected security interest in certain sewing machines now in the possession of Mohawk.[1] Connecticut filed its answer and counterclaim in which it asks the Court to determine who has title to said machines. Connecticut opposes the debtor's motion for summary judgment contending that whether or not the transaction entered into between it and Mohawk was a true lease or one intended as security is a question of fact requiring a trial to determine the intent of the parties.

### FINDINGS OF FACT

A hearing was held in Springfield on August 8, 1984 on the debtor's motion for summary judgment at which the Court requested responsive pleadings to be filed and took the matter under advisement. After a review of the record and pleadings, the Court finds that the following facts are undisputed:

1. On or about October 4, 1983, Connecticut supplied Mohawk with 22 specialized sewing machines for use in its canvas tent fabrication business.

2. In connection with the above transaction, Mohawk executed a Standard Security Agreement and Uniform Commercial Code ("U.C.C.") Financing Statement naming Connecticut as the secured party, which security interest was not perfected by the required filings.[2]

3. The sum of $93,238, represented by five simultaneously delivered invoices, numbered 13933, 13935, 13936, 13937 and 13938, was to be paid by Mohawk to Connecticut for the 22 sewing machines, after which Mohawk was to own the machines.

4. Each of the above five invoices states that the payment to be made by Mohawk was for a certain monthly "rental period" beginning October 4, 1983 and ending March 4, 1984, five months later.

5. Subsequent to October 4, 1983, the debtor paid invoice No. 13933 in the amount of $30,000.

7. No payments were made by Mohawk to Connecticut on the other invoices.

### DISCUSSION

Richard J. Scullin, Jr. ("Scullin"), the President of Mohawk, was deposed by Connecticut on May 25, 1984 and admits that it was advantageous to Mohawk to structure the transaction between it and Connecticut as a "purchase rental" of the sewing machines. He says that in January or February of 1983, Mohawk entered into a contract with the United States Government for the production of 13,000 tents. The contract provided that Mohawk would be paid or reimbursed for rental of the equipment it needed to complete the contract which Scullin says would not be the case if there was an outright purchase. Accordingly, the first invoice for $30,000 was submitted to and paid by the government for

---

1. The complaint also sought to enjoin Connecticut from pursuing self-help repossession actions; however, by agreement of the parties, the injunctive issues were resolved.

2. Under Mass.Gen.Laws Ann. ch. 106, § 9–401(1)(c), in order to have a perfected security interest in this equipment a financing statement should have been filed in the office of the Secre-

tary of State for the Commonwealth of Massachusetts and the Clerk's office for the Town of Adams, where the debtor has its place of business. A lessor is permitted to file a financing statement "but its filing shall not of itself be a factor in determining whether or not the ... lease is intended as security." *Id.* at § 9–408.

the "rental period" October 4, 1983 through November 4, 1983, and Mohawk paid the $30,000 to Connecticut. Scullin says that the second invoice for the "rental period" November 4, 1983 through December 4, 1983 was also paid by the government but alleges that because the equipment was not running properly, this payment was not forwarded to Connecticut. According to Scullin, he became aware that Mohawk was having financial problems sometime in December 1983. Mohawk filed its petition under Chapter 11 on January 13, 1984.

Connecticut avers that since Mohawk's intent was to submit the invoices to the government as rental payments in order to have the invoices paid under Mohawk's contract with the government, a lease with Connecticut was intended rather than a secured installment sale. In its answer, however, Connecticut admits writing a letter to Mohawk on January 16, 1984, three days after this bankruptcy proceeding was commenced, in which it proposed alternative methods for curing Connecticut's default and characterized the existing agreement as a "rental purchase contract." As Connecticut itself observed, in this Court's decision in *In re New England Stone & Sand, Inc.*, Adv.Pro. No. 4–81–0375, slip op. at 8 (Bankr.D.Mass. May 8, 1984), one of the bases for the conclusion that the transaction in that case was a conditional sale and not a lease was that the defendant himself had characterized the transaction as an "installment sale sort of thing."

A leading treatise discusses the issue of whether a lease is a true lease or one intended as security controlled by Article 9 of the U.C.C.:

> The 'lease v. security interest' issue is one of the most frequently litigated issues under the entire Uniform Commercial Code. Different factors may influence parties to follow the widespread practice of casting what is in substance a secured installment sale into the form of a 'lease' providing for 'rental' payments. For example, the 'lessor' may hope to

avoid complying with the Article Nine filing and default provisions. Or the 'lessee' may hope to get a larger federal tax deduction by paying 'rent' than he would were he to buy outright and take a depreciation allowance as a deduction. Or the 'lessee' may hope to avoid a local tax or local regulation that applies to owners but not lessees. If a party wants to think of himself as a lessor and has been advised by his lawyer that he is a lessor, he may choose not to file under Article Nine, and when trouble arises, find himself in a lawsuit....

> ....

> The clearest possible such case [of a secured installment sale] is one in which the 'lessee,' by the terms of the 'lease' itself, is to become owner of the property at the end of the lease period in exchange for amounts previously paid, called 'rentals,' which were really nothing more than installments on the purchase price.... Frequently, though, the lease period will be relatively short, and the periodic payment therefore much higher than a fair rental charge for such intervals. In all such cases the lessor is simply a seller or other financer in lessor's clothing who has retained an interest to secure the buyer's promise to buy and pay the required installments on the purchase price.

J. White & R. Summers, Uniform Commercial Code, 878, 880 (2d ed. 1980) (footnote omitted).

 As this Court recently observed, it is well settled that Massachusetts and the majority of other jurisdictions look to substance over form when deciding if a transaction is a lease or a conditional sale. *In re New England Stone & Sand, Inc.*, *supra*, slip op. at 6–7 (citing *Carlo Bianchi & Co. v. Builders' Equipment & Supplies Co.*, 347 Mass. 636, 199 N.E.2d 519 (1964)). While intent is usually a question of fact, when the requirements for summary judgment are nonetheless satisfied and only one conclusion may reasonably be drawn, summary judgment is proper. *Gard v. United States*, 594 F.2d 1230, 1234 n. 2 (9th Cir.

1979), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979) and *Flying Diamond Corp. v. P. Pennaluna & Co.,* 586 F.2d 707, 713 (9th Cir.1978). *See also Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 929 (1st Cir.1983) ("the presence of issues involving state of mind, intent or motivation does not automatically preclude summary judgment"); *White v. Hearst Corp.,* 669 F.2d 14, 17 (1st Cir.1982); *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

Connecticut admits sending a letter to Mohawk in which it lists the five subject invoices and states that after payment of the invoices, "ownership of all equipment will then be transferred to MOHAWK INDUSTRIES." In *Carlo Bianchi & Co., supra,* the Massachusetts Supreme Judicial Court held that a transaction was a conditional sale even though the contract was worded in terms of a lease because, as in the case now before the Court, the total rental payments equaled the purchase price and the "lessee" was to become the owner at the end of the contract period.[3] *See also In re Vaillancourt,* 7 U.C.C.Rep.Serv. 748 (Bankr.D.Me.1970) (option to purchase at end of term for $1 was conditional sale).

In *In re Gehrke Enterprises, Inc.,* 1 B.R. 647 (Bankr.W.D.Wis.1979), the court found the leases in that case were intended as security where the amount the lessee was obligated to pay was equal to the value of the leased goods, and the lessor was to transfer title upon termination of the agreement. The court further found that retention of title by the plaintiff creditor-lessor was immaterial, and the plaintiff was not entitled to reclaim possession since it had not availed itself of the protective filing under Article 9 prior to the commencement of the bankruptcy proceedings.

*See also Centurian Corp. v. Cripps,* 624 P.2d 706, 34 U.C.C.Rep.Serv. 525 (Utah 1981) ("lease agreement is actually a purchase and sale agreement ... if the 'lessee' is constrained to become the owner of the property at the termination of the lease, either by contractual agreement or as a matter of economic compulsion").

It was observed in an early case by then Referee Asa Herzog that "an agreement called a lease has been uniformly held to be a conditional sales contract where the so-called rental payments equalled the selling price, and upon completion of all such payments the so-called lessee would become the owner of the chattel." *In re Oak Manufacturing, Inc.,* 6 U.C.C.Rep.Serv. 1273, 1277 (Bankr.S.D.N.Y.1969) (citing *Allen v. Cohen,* 310 F.2d 312 (2d Cir.1962); other citations omitted). *See also In re Coors of the Cumberland, Inc.,* 19 B.R. 313, 316 (Bankr.M.D.Tenn.1982) ("The decisive factor in distinguishing a lease intended for security from a true lease is whether the instrument in question will ultimately result in the purported lessee gaining *de facto* ownership of the subject matter of the lease."); *In re Peacock,* 6 B.R. 922, 925 (Bankr.N.D.Tex.1980) (court "compelled as a matter of law" to find lease intended as security where lessee shall become or has option to become owner for no additional consideration) (citations omitted).

It is clear from the pleadings themselves that there was no obligation imposed on Mohawk to return the sewing machines to Connecticut at the end of the "rental" periods. Such an obligation has been considered " 'the distinguishing characteristic of a lease.' " *In re Pye,* 13 B.R. 307, 309 (Bankr.D.Me.1981) (quoting 1 Benders' UCC Service, Coogan, Secured Transactions Under the UCC, § 4A.01[1] ).

Although other factors have been considered by courts in determining whether a

---

**3.** Connecticut states in its January 16, 1984 letter to Mohawk that its "normal monthly rental charge for this type of unique and unpopular equipment and for this same number of machinery when there is no purchase clause attached to the agreement, is $9,150, per month." At that rate, if a "normal" lease had been entered into, the rental for the five months would have been $45,750, instead of the $93,238 total which was to be paid for the "rental purchase" of the 22 sewing machines. It is uncontroverted that the "rental" payments equaled the purchase price, and that $93,238 was considered the fair market value of the machines.

transaction is a true lease or one intended for security, proviso (b) of U.C.C. § 1–201(37), as codified in Mass.Gen.Laws Ann. ch. 106, § 1–201(37), appears to be a clearly determinative factor in this case. *See In re Alves Photo Service, Inc.*, 8 B.R. 864, 865 (Bankr.D.Mass.1981) (citations omitted). Said section provides:

> Whether a lease is intended as security is to be determined by the facts of each case; however, ... (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Mass.Gen.Laws Ann. ch. 106, § 9–102 provides that Article 9 "applies to security interests created by contract including ... conditional sale, ... other lien or title retention contract and lease or consignment intended as security."

In discussing identical provisions in Maine's version of the U.C.C., the court in *In re Pye, supra*, 13 B.R. at 309, observed: "It is well settled that 'intended as security' as used in both sections 1–201(37) and 9–102 has little to do with the subjective intent of the parties.... The necessary intent, or lack of intent, should be determined from the effect of the parties' actions." (citations omitted). *See also In re Coors of the Cumberland, Inc., supra*, 19 B.R. at 316 ("The terms of the financing arrangement rather than the subjective intent of the parties determine whether the lease is one intended for security.") (citing *In re Peacock, supra*, 6 B.R. at 924; other citations omitted). In *State Bank of Burleigh County Trust Co. v. All-American Sub, Inc.*, 28 U.C.C. 1083, 1087, 289 N.W.2d 772 (N.D.1980), the court said that "whether or not a lease is intended as security ... is to be determined from within the four corners of the writing as a question of law." (citations omitted). The court concluded that the lease in that case was intended as security despite an express provision in the agreement to the contrary, and said "we do not find these denominations to be conclusive proof that a lease was not

intended as security." *Id.* at 1088, 289 N.W.2d 772 (citations omitted). *See also United States Fidelity & Guaranty Co. v. Thompson & Green Machinery Co.*, 568 S.W.2d 821, 825 (Tenn.1978) ("intent of the parties is always controlling and is to be ascertained from the whole transaction, and not merely from the language employed"); *In re Coors of the Cumberland, Inc., supra*, 19 B.R. at 316 ("A party cannot avoid the legal consequences of an installment sales contract by simply labeling a financing arrangement as a lease.").

Although Mohawk hoped to benefit by representing the transaction to the government as a lease rather than a purchase, and because Mohawk subsequently defaulted in its payments to Connecticut, does not transform what was apparently an installment sale into a lease. Connecticut admits that a security agreement and U.C.C. financing statement were executed in connection with this transaction but that it did not take the steps necessary to protect its security interest in the 22 sewing machines by appropriate U.C.C. filings to perfect it. "The secured party is ultimately responsible for protecting its security interest." *In re Poteet*, 5 B.R. 631, 636 (Bankr.D. Tenn.1980).

█ Fed.R.Civ.P. 56(c) provides, in pertinent part, that summary judgment is appropriate "if the pleadings, depositions ... and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court must view the record in the light most favorable to the party opposing the motion and draw all inferences favorable to that party when making its ruling. *Stepanischen v. Merchants Despatch Transportation Corp., supra*, 722 F.2d at 928; *Hahn v. Sargent, supra*, 533 F.2d at 464. "The purpose of summary judgment is to go behind the pleadings and determine whether any further exploration of the facts is really necessary." *Packish v. McMurtrie*, 697 F.2d 23, 27 (1st Cir.1983) (citing *Briggs v. Kerrigan*,

431 F.2d 967, 968 (1st Cir.1970)). A court in its discretion may dispose of a case before trial where it is determined that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

 The burden of showing that there are no genuine issues of material fact rests initially with the party moving for summary judgment. *Weinberger v. Hynson, Wescott & Dunning, Inc.,* 412 U.S. 609, 622 n. 18, 93 S.Ct. 2469, 2479, n. 18, 37 L.Ed.2d 207 (1973) (citing *Adickes v. Kress & Co., supra,* 398 U.S. at 157, 90 S.Ct. at 1608). Once that initial burden is met, the party opposing the motion must then come forward with specific facts and evidence sufficient to raise triable issues of fact and not merely rely on contrary allegations. *See Adickes, supra,* 398 U.S. at 160, 90 S.Ct. at 1609. The Court finds that Mohawk met its burden but Connecticut failed to prove that there are any genuine issues of material fact requiring a trial.

## CONCLUSIONS OF LAW

After reviewing the pleadings and the record in this matter, the Court finds that Mohawk is the owner of the 22 sewing machines and that Connecticut has the status of an unsecured creditor of Mohawk, not having perfected its security interest by filing as required by Mass.Gen.Laws Ann. ch. 106, § 9–302, or even as permitted by § 9–408.[4] Connecticut's rights, therefore, are subordinate to the rights of "a person who becomes a lien creditor before the security interest is perfected." Mass. Gen.Laws Ann. ch. 106, § 9–301(1)(b). A lien creditor is defined as "a creditor who has acquired a lien on the property involved by attachment, levy or the like ... and a trustee in bankruptcy." *Id.* at § 9–301(3). A trustee has not been appointed in this case, but Mohawk, the debtor in possession in this Chapter 11 case, has all the rights,

---

**4.** See *supra* note 2.

powers and duties of a trustee. 11 U.S.C. § 1107(a).

### ORDER

In consideration of the above, the debtor's motion for summary judgment is allowed.

SO ORDERED.