**Treg NEAL, Plaintiff,**

v.

**BENTLY NEVADA CORPORATION, Defendant.**

**No. CV–N–89–779–ECR.**

United States District Court, D. Nevada.

July 12, 1991.

---

**1070**

Charles M. Kilpatrick, Carson City, Nev. and Federico C. Sayre, Los Angeles, Cal., for plaintiff.

Douglas A. Sloane, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

On December 4, 1989, plaintiff Treg Neal (Neal) (Plaintiff) filed a diversity action (document # 1) in this Court alleging that on or about August 1, 1987, he and other members of the public used property, owned by defendant Bently Nevada Corporation (Bently) (Defendant), for recreational use. Neal swung from a rubber hose tied to a tree and dove into a shallow part of the Carson River. He landed on his head and sustained "serious and permanently disabling injuries."

Neal claimed that Bently negligently, consciously and recklessly controlled its premises, allowing the rope to be tied to a tree next to the river. Neal further claimed that Bently's actions "constitute a willful and malicious failure to guard or warn against a known dangerous condition, use and activity."

Bently claimed no liability for plaintiff's injuries in an amended answer on December 20, 1989 (document # 3). Defendant alleged as an affirmative defense Nevada Revised Statute § 41.510—Nevada's recreational use statute.

On September 14, 1990, Bently filed a motion for summary judgment (document # 18). Neal filed an opposition to defendant's motion for summary judgment (document # 19) on September 26, 1990. Defendant filed a reply in support of its motion for summary judgment (document # 20) on October 11, 1990. Plaintiff filed a supplemental opposition to defendant's motion for summary judgment (document # 32) on May 16, 1991. Defendant filed a response to plaintiff's supplemental opposition (document # 33) on May 22, 1991. Plaintiff filed a reply supplemental opposition to defendant's motion for summary judgment (document # 34) on May 29, 1991. Defendant filed a response to plaintiff's reply supplemental opposition to defendant's motion for summary judgment (document # 35) on May 31, 1991.

Plaintiff filed an amended complaint on January 30, 1991 (document # 28), which changed the amount in controversy from "exceeding $10,000" to "exceeding $50,-000." The amended complaint does not affect this motion for summary judgment.

The uncontroverted facts are as follows. Neal was seventeen years old on the date of the accident, August 1, 1987. He was visiting, from his residence in Southern California, his older brother in Carson City, Nevada. Neal went to the Carson River that day with his brother (David) and his brother's friend (Shawn). David and Shawn had made numerous rope swing dives that day before Neal's accident, which occurred on Neal's third swing. The water was about ten feet deep.

When Neal used defendant's property on the day of the accident he did not know who owned the land on which the tree-rope swing was situated. Nor had he obtained permission to enter upon the land or paid consideration to use the land or the rope swing.

Bently's principal place of business is in Douglas County, Nevada. Bently owns approximately 12,000 acres of primarily undeveloped property in western Nevada. Defendant has owned since 1978, the 520 acre parcel of property in Carson City, Nevada, on which the tree-rope swing was located. The tree is directly next to the Carson River, which runs through defendant's property. Bently has never used this parcel for any purpose. The area had been used as a rope swing site since 1957. It is commonly known within Carson City that people have used the Carson River for recreational purposes over the past 45 years.

There is no corporate policy to monitor activity on Bently's undeveloped property or to restrict public access to the property that housed the rope swing. Bently took no steps to guard or warn the public against using the property as a rope swing site. Bently's CEO recognizes that rope

swinging by teenagers into shallow water is a dangerous activity.

Defendant has never received any complaints regarding this parcel. The sheriff and watch commander who responded to the accident had no knowledge of any previous accidents on the Carson River stemming from a tree-rope swing.

Access to the accident site is only by two narrow bumpy dirt roads. From the south access is via a dirt road off Highway 50, approximately 3 miles, taking ten minutes. From the north, access is via a dirt road off Highway 50, approximately 4½ miles, for twenty minutes.

No evidence exists that any Bently officer visited the property prior to the accident or was aware of any use of the property, of a rope swing or of any previous accidents. Bently's Construction Manager visited the northern end of the property, not the southern end where the accident occurred, in the spring of 1984 concerning a mineral survey. He was the only Bently employee to visit the property for business purposes as of the accident date.

Bently's President, however, has visited the area twice for recreational purposes. He has not seen a rope swing. He does not know whether, during those visits, he was on the Bently property or near the rope swing site. Bently's President does not know if any effort has been made to determine whether any Bently officers or employees knew of a tree with a rope swing on the Carson River. Nor has Bently's CEO made any effort to determine whether any Bently officers or employees had any prior knowledge of recreational use of the Carson River in Carson City. He has, however, heard stories of a raft race on the Carson River.

■ Summary judgment is granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the most important goals of summary judgment is to avoid wasting resources and time where a trial would be a mere formali-

ty. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9th Cir.1975), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975).

The party seeking summary judgment bears the responsibility of demonstrating to the court the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party must set forth in affidavits or other material specific facts showing that there is a genuine issue of material fact. *Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir.1978) (construing Fed.R.Civ.P. 56(e)), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979).

■ For summary judgment purposes, material facts are those that could affect the outcome of the suit under the applicable substantive law. An issue is genuine if the evidence could support a finding by a reasonable jury in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

The inferences to be drawn from the facts set forth in the motion for summary judgment and related materials must be viewed in the light most favorable to the opposing party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

■ Depositions or affidavits supporting or opposing the motion for summary judgment must be made on personal knowledge. The facts contained therein must be admissible in evidence. The depositions or affidavits must show that the deponent or affiant is competent to testify to those facts at trial. Fed.R.Civ.P. 56(e).

The Court must apply Nevada law since in a diversity action, such as this, the court must apply the law of the state in which the federal court sits.

The premises and activity in this case come within Nevada's recreational use statute. Recreational use statutes generally apply to premises in rural, semi-rural or non-residential areas and to injuries in-

curred by an activity enumerated in the statute that can be pursued in the "true outdoors." 62 Am.Jur.2d *Premises Liability* § 124 (1990).

The location of the site is rural—next to the Carson River; access is by dirt road, ten to twenty minutes off the main highway. Rope swinging from a tree into the river can only be pursued in the "true outdoors" and is covered under "any other recreational purposes."

Nevada's recreational use statute provides:

1. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for crossing over to public land, hunting, fishing, trapping, camping, hiking, sightseeing, or for any other recreational purposes, or to give warning of any hazardous condition, activity or use of any structure on the premises to persons entering for those purposes, except as provided in subsection 3.

2. ...

3. This section does not limit the liability which would otherwise exist for: (a) Willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity....

4. ...

Nev.Rev.Stat.Ann. § 41.510 (Michie 1986).

■ The purpose of recreational use statutes is "to encourage owners of land within rural areas to make land and water areas available for recreational purposes by limiting their liability towards persons entering thereon for such purposes." *Ducey v. United States*, 523 F.Supp. 225, 229–230 (D.Nev.1981) (quoting Colo.Rev.Stat., Title 33, Art. 41, § 101).

■ Unless willful or malicious failure to guard or warn against the dangerous condition can be shown, a landowner does not owe a duty even to inspect its rural, semi-rural or non-residential property to persons who may enter thereon for the recreational purposes within the statute.

We must determine whether a genuine issue of material fact exists regarding Bently's control of its premises. We must ascertain whether Bently willfully and maliciously failed to guard or warn against a known dangerous condition, use and activity.

■ Defendant claims it had no authority to exclude the public from the river. The State of Nevada holds title to the Carson River. *State v. Bunkowski*, 88 Nev. 623, 633, 503 P.2d 1231 (1972). The river, however, runs through the defendant's property. Anyone near the river on defendant's property may come into contact with the river simply by being on the property. Moreover, plaintiff used defendant's property to propel himself into the river. Defendant cannot disclaim responsibility based on not owning the area where plaintiff landed while it owns the premises from which plaintiff initiated the activity that resulted in injury.

The Court notes that though plaintiff alleges willful *and* malicious misconduct, he only sets forth in his oppositions to the motion for summary judgment facts concerning willful misconduct. Malice is separate from will. *McMurray v. United States*, 918 F.2d 834, 837 n. 3 (9th Cir.1990) (United States held liable for willful failure to guard or warn against hot springs with temperature from 160 to 180 degrees Fahrenheit). Plaintiff does not set forth facts from which malice can be inferred. Hence, the Court does not review the motion for summary judgment on that basis.

It is undisputed that defendant did not guard or warn against use of the property. Thus, we must determine whether Bently's failure to guard or warn against use of its property as a rope swing site was willful, whether the condition of, use of and activity on the property as a rope swing site were known to Bently, and whether the condition, use and activity were dangerous.

■ According to Nevada law, willful misconduct is "... intentional wrongful conduct, done either with knowledge that serious injury to another will probably result, or with a wanton or reckless disregard of the possible results." *Davies v. Butler*, 95 Nev. 763, 769, 602 P.2d 605 (1979). *See also Van Cleave v. Kietz–Mill Minit Mart*,

97 Nev. 414, 416, 633 P.2d 1220 (1981) (Willful misconduct is an act "that the actor knows, or should know, will very probably cause harm") (quoting *Rocky Mountain Produce v. Johnson,* 78 Nev. 44, 51–52, 369 P.2d 198 (1962)); *Bell v. Alpha Tau Omega Fraternity,* 98 Nev. 109, 112, 642 P.2d 161 (1982) ("Willful misconduct requires a consciousness that one's conduct will very probably result in injury").

■ On the basis of Nevada Supreme Court decisions in *Davies, Van Cleave,* and *Bell,* the Ninth Circuit Court of Appeals holds that intent to injure has been removed from Nevada's definition of willful. *McMurray,* 918 F.2d at 836–37. We conclude that no intent to injure requirement exists within Nevada's definition of willful misconduct.

Defendant in its motion for summary judgment cites cases which use a definition of willful misconduct that includes intent to injure. *Gard v. United States,* 594 F.2d 1230, 1233 (9th Cir.1979); *Ducey* at 229–30. However, as noted above, the requirement of intent to injure has been removed from Nevada's definition of willful. Hence, the cases are inapposite. *Blair v. United States,* 433 F.Supp. 217 (D.C.Nev.1977), does not support its motion because the court did not delineate its definition of willful.

Additionally, defendant's reliance on *Craigo v. Circus–Circus Enterprises, Inc.,* 106 Nev. 1, 786 P.2d 22 (1990), to support intent to injure as a requirement of willful misconduct is misplaced. *Craigo* held that based on *malice,* to receive punitive damages, the wrongful conduct must be done with "the deliberate intent to injure." *McMurray* at 837 n. 3 (quoting *Craigo* at 26).

The district court case that was affirmed by the Ninth Circuit in *McMurray,* 918 F.2d 834, applied the test for willful misconduct from *Rost v. United States,* 803 F.2d 448 (9th Cir.1986). *Rost* used the same definition of willful misconduct as does Nevada. *Rost* at 450. The Nevada recreational use law is essentially identical to the California recreational use law in

this respect. *Rost* at 450. The Nevada District Court found that the Nevada Supreme Court would use the three-pronged test which the district court adopted from *Rost. Rost* at 451.

■ The three-pronged test for determining willful misconduct is "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril." *Rost* at 451 (quoting *Morgan v. Southern Pacific Transportation Co.,* 37 Cal.App.3d 1006, 1012, 112 Cal.Rptr. 695 (1974)).

The only actual knowledge defendant had of any possible recreational use of its property is through its CEO of stories of a raft race on the Carson River and through its President who has visited the area twice for recreational purposes. Defendant asserts that it had no actual or constructive knowledge of the rope swing use or of the danger it may have presented.

On the record before us, there is no evidence of any Bently officer or employee having actual knowledge of the rope swing use on its property. Nor did Bently guard or warn against that use. Defendant's CEO recognizes that rope swinging by teenagers into shallow water is a dangerous activity. Thus the issue becomes whether Bently had constructive knowledge that rope swinging on its property existed and that the Carson River's water level could be shallow at the site or that the conditions at the site made rope swinging there dangerous for another reason, such that injury would probably result.

■ To determine constructive knowledge the Court uses an objective standard. Would "... a reasonable [person] under the same or similar circumstances as those faced by the actor ... be aware of the dangerous character of [the] conduct." *Rost* at 451.

■ A reasonable jury could find that a reasonable person in defendant's shoes had constructive knowledge that rope swinging on its property existed. This is so based on

the facts set forth by the plaintiff, under the circumstances shown by plaintiff's and defendant's affidavits, and viewing inferences therefrom in the light most favorable to the plaintiff.

The rope swing site has been in use since 1957. Recreational use of the Carson River has occurred for over four decades. Defendant's CEO has heard stories of a raft race on the Carson River. Defendant's President has visited the area twice for recreational purposes. Defendant's principal place of business is in Douglas County, adjacent to Carson City. The ongoing public use of the rope swing site, the specific knowledge defendant has of the public's recreational use of the Carson River and the location of defendant's principal place of business support this finding.

Plaintiff has not, however, presented the Court with any facts relevant to whether a reasonable jury could find that the defendant had constructive knowledge that the Carson River's water level could be shallow at the site or that the conditions at the site made rope swinging there dangerous for another reason, such that injury was probable. Hence, summary judgment must be granted.

Plaintiff cites *Von Tagen v. United States*, 557 F.Supp. 256 (N.D.Cal.1983), to support his assertion that issues of constructive knowledge remain. In *Von Tagen*, the plaintiff alleged that his accident resulted from the government's failure to guard or warn automobile drivers against a sharp curve along a road on government property. *Id.* at 258.

The plaintiff submitted reports of seven other prior accidents of the same nature. He also submitted an expert's evaluation that the lack of warning or guarding was not in accordance with widely accepted state-of-the-art highway safety engineering practice. *Id.* at 260.

California's recreational use statute was almost identical to Nevada's. *Id.* at 258. The court used a definition of willful misconduct similar to Nevada's. Willful misconduct was described as intentional wrongful conduct done with knowledge that serious harm will probably result or with wanton and reckless disregard for the possible harm. *Von Tagen* at 259.

The defendant's motion for summary judgment was denied in part, regarding defendant's willfulness. *Id.* at 261. Plaintiff had raised a genuine issue of material fact through the accident reports and expert evaluation. In contrast, Neal submits no facts regarding constructive knowledge of probable injury-resulting danger at the site. Nor does the expert evaluation Neal submitted assert that Bently acted below a generally accepted safety standard. *Von Tagen* is not dispositive here.

Plaintiff also cites *Lostritto v. Southern Pac. Transp. Co.*, 73 Cal.App.3d 737, 140 Cal.Rptr. 905 (1977), in support of his opposition to this motion. A 16–year old on property owned by the defendant dove from a trestle owned by defendant into a river owned by defendant and sustained serious permanent injury. *Id.* at 743, 746–47, 140 Cal.Rptr. 905. Plaintiff alleged, *inter alia*, willful failure to warn or guard against the hazard. *Id.* at 743, 140 Cal. Rptr. 905.

Many of defendant's employees knew of the regular diving and jumping activity at the site. A lawyer employee of the defendant knew that people had been hurt from the activity. An accident resulting in death was reported in a local newspaper. *Id.* at 744–45, 140 Cal.Rptr. 905. Defendant was charged with notice of the dangerous condition which had existed "for a long time." *Id.* at 745, 140 Cal.Rptr. 905.

The same definition of willful misconduct was used as in *Von Tagen*. *Lostritto*, 73 Cal.App.3d at 744, 140 Cal.Rptr. 905. At trial, the jury found against the defendant on the willful misconduct issue. *Id.* at 743, 140 Cal.Rptr. 905. Defendant appealed the judgment and the denial of its judgment notwithstanding the verdict (j.n.o.v.). *Id.* at 744, 140 Cal.Rptr. 905. Defendant's appeal from the judgment was dismissed, and the order denying j.n.o.v. on willful misconduct was affirmed. *Id.* at 750, 140 Cal. Rptr. 905.

The *Lostritto* court based its decision, in part, on facts similar to those that exist in

the present case. The site was near a popular swimming and bathing area, easily accessed by the public. An assistant city attorney said that the diving had been going on for years. *Id.* at 744, 140 Cal.Rptr. 905.

There are, however, significant factual differences between *Lostritto* and the present case. The defendant in *Lostritto* owned and knew of the trestle from which the public dove, where Bently had no actual knowledge of the rope swing on its property. Accident stories and a report exist existed, whereas there are none here. The *Lostritto* defendant was charged with notice of the longstanding dangerous condition. Here, plaintiff has presented no evidence that defendant should have known of dangerous conditions or probable injury.

Plaintiff has set forth facts from which a reasonable jury could infer defendant's constructive knowledge of rope swing use. However, plaintiff has not raised a genuine issue of material fact because he has not set forth any information regarding constructive knowledge of danger at the rope swing site from which injury would probably result.

Constructive knowledge of use, hence, would not affect the outcome of the case because the danger and probable injury issue remains. A reasonable jury could not return a verdict for the plaintiff without also finding in favor of the plaintiff regarding defendant's constructive knowledge of a dangerous condition which would probably result in injury.

IT IS, THEREFORE, HEREBY ORDERED that defendant's motion (document # 18) for summary judgment is GRANTED. The clerk shall enter judgment accordingly.