JONATHAN D. BOLAND, APPELLANT, v. NEVADA ROCK AND SAND CO., A NEVADA CORPORATION; NEIL STEWART; ALDEN STEWART, HAROLD STEWART, MILDRED STEWART AND STEWART GRAVEL PIT, A LIMITED PARTNERSHIP OF NEIL STEWART, ALDEN STEWART, HAROLD STEWART AND MILDRED STEWART; KENNETH NEIL STEWART; GARY LINCK STEWART; B. TRUST; MILDRED L. TRUST; STEWART BROTHERS CO.; NEVADA READY MIX CORPORATION, A FOREIGN CORPORATION; DARRELL THORNTON; TATSUO MATSUOKA AND SHIGERU IISUKA, RESPONDENTS.

No. 25293

May 12, 1995                    894 P.2d 988

[Rehearing denied October 19, 1995]

*Christopher G. Gellner,* and *Gubler, Peters & Mark,* Las Vegas, for Appellant.

*Rawlings, Olson & Cannon* and *John E. Gormley,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

### FACTS

On March 4, 1989, Jonathan D. Boland ("Boland"), Marc H. Cram ("Cram"), and Kent E. Wilson ("Wilson") drove to an area outside Henderson, Nevada, to ride a dirt bike (motorcycle).

Cram and Wilson each took a turn on the dirt bike. Boland, an experienced dirt bike rider, then took the dirt bike and went on the same route as his companions. Later, Cram suspected there might be a problem when Boland did not come back and Cram could not hear any noise. Cram and Wilson went looking for Boland and found him lying at the bottom of a hill.

Boland apparently rode to the top of the hill and, seeing that it

was level, proceeded to pick up speed to ten or fifteen miles per hour. Boland then saw that there was a drop-off, but he could not stop in time.

As a result of Boland's fall, he is a paraplegic. Boland sued, claiming all respondents had an interest in the property where his injury occurred. He further contends that respondents were responsible for his injuries because they knew or should have known the property was used by dirt bikers, and respondents failed to warn of possible dangers.

Most of the area where the men were riding, a 320-acre mining basin, is owned by respondent Stewart Brothers Company. However, some of the land is owned by either respondent Nevada Rock & Sand Company ("Nevada Rock") or respondent Nevada Ready Mix Corporation ("NRM"). The remaining respondents are either officers, directors, or owners of Stewart Brothers Company, Nevada Rock, or NRM.

The area was described by Wilson as being "[j]ust big piles of sand in the middle of flat nowhere, no houses around." In fact, Boland stated that he did not realize that they were riding in a commercial gravel pit. There are trails where other people apparently rode dirt bikes. There are three huge reject sand piles inside the pit created by NRM's operation and by the operation of Nevada Rock's screening pit.

Both Boland and respondents filed motions for summary judgment. The district court held a hearing on both motions and granted respondents' motion for summary judgment primarily based on NRS 41.510.

## DISCUSSION

Under NRCP 56(c), summary judgment should be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). To prevail, the nonmoving party must show specific facts demonstrating the existence of a genuine issue for trial. Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 294, 662 P.2d 610, 618-19 (1983).

In certain instances, NRS 41.510 may immunize defendants from liability and therefore justify a grant of summary judgment. *See* Neal v. Bently Nevada Corp., 771 F. Supp. 1068 (D. Nev. 1991), *affirmed,* 5 F.3d 538 (9th Cir. 1993); Blair v. United States, 433 F. Supp. 217 (D. Nev. 1977); Gard v. United States, 420 F. Supp. 300 (D. Nev.), *affirmed,* 594 F.2d 1230 (9th Cir. 1976), *cert. denied,* 444 U.S. 866 (1979).

NRS 41.510 states, in relevant part:

1. Except as otherwise provided in subsection 3, an owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for crossing over to public land, hunting, fishing, trapping, camping, hiking, sightseeing, hang gliding, para-gliding or for any other recreational purposes, or to give warning of any hazardous condition, activity or use of any structure on the premises to persons entering for those purposes.

2. Except as otherwise provided in subsection 3, if an owner, lessee or occupant of premises gives permission to another to cross over to public land . . . or participate in other recreational activities, upon his premises:

(a) He does not thereby extend any assurance that the premises are safe for that purpose, constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

. . . .

3. This section does not:

(a) Limit the liability which would otherwise exist for:

(1) Willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity.

All that is required in order for NRS 41.510 to apply is that (1) respondents must be the owners, lessees, or occupants of the premises where Boland had been injured; (2) the land where Boland had been injured must be the type of land the legislature intended NRS 41.510 to cover; and (3) Boland must have been engaged in the type of activity the legislature intended NRS 41.510 to cover. We conclude that the district court correctly applied NRS 41.510.

All respondents were either owners, lessees or occupants of the land in question when Boland was injured. Boland argues that Nevada Rock and NRM could not claim immunity under the statute because they both only hold licenses to use the property, but are not owners, lessees or occupants.

This argument fails as to Nevada Rock because Boland alleged in his complaint that Nevada Rock has an ownership interest in the property where he had been injured.[1] It is disingenuous that Boland would argue that a company is liable because it has an ownership interest, and yet the company cannot be immune under

[1]In Boland's complaint, he alleged that all respondents "have an ownership interest personally, individually, and/or in some other capacity in the subject real property that caused Plaintiff's injuries."

the statute because it does not have an ownership interest. Nevertheless, Nevada Rock has mined the land in question for over twenty-five years creating a "degree of permanence." *See* Labree v. Millville Manufacturing, Inc., 481 A.2d 286 (N.J. 1984) (holding that "occupant" means "an entity with a degree of permanence").

This argument also fails as to NRM. Once again, Boland alleged in his complaint that NRM has an ownership interest in the property where he was injured. Boland acknowledges that NRM had been operating the sand and gravel pit for three months before his accident and to date. In addition, NRM sold the reject sand from the mining pit to American Asphalt. We conclude that NRM occupied the land as a matter of law. *See, e.g.,* Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193, 1197 (7th Cir. 1987) (occupant should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner). In *Smith,* defendants simply blazed a trail for recreational snowmobilers, and they were considered "occupants" within the meaning of the recreational use statute. *See also* Ward v. State, 871 P.2d 711 (Ariz. 1993).

We also conclude that the land where Boland was injured was the type of land intended to be covered by the statute. Although the Nevada statute does not specify what type of property is covered, the intent of the legislature is that the property be used for recreation. Therefore, the type of property should be rural, semi-rural, or nonresidential so that it can be used for recreation. *See Neal,* 771 F. Supp. at 1971-72. In addition, the only case this court has decided that addresses NRS 41.510 applied the statute to "open" land. *See* Brannan v. Nevada Rock & Sand, 108 Nev. 23, 25, 823 P.2d 291, 292 (1992).

In addition, we conclude that Boland was engaged in the type of activity the legislature intended the statute to cover. This court stated in *Brannan* that "Brannan's motorcycle-riding was undisputedly a recreational use." *Id.* at 25, 823 P.2d at 292. Boland presents no argument that would distinguish his motorcycle-riding from the type considered by this court in *Brannan,* and therefore his activity falls within the type of activity intended by the legislature in NRS 41.510.

Although NRS 41.510 applies, respondents are immune under the statute only if they were not engaged in willful or malicious conduct that caused Boland's injury. *See* NRS 41.510(3)(a)(1). "Wilful or wanton misconduct is intentional wrongful conduct, done *either* with knowledge that serious injury to another will

probably result, *or* with a wanton or reckless disregard of the possible result." Davies v. Butler, 95 Nev. 763, 769, 602 P.2d 605, 609-10 (1979) (emphasis in original).

We conclude that the district court did not err in finding respondents did not act willfully as a matter of law. Although the issue of willfulness is generally a question of fact, Boland presented no evidence that respondents willfully acted to cause Boland's injury. In *Neal,* the United States District Court found that even if a jury could find that defendant had knowledge of a rope swing used on his property, the jury could not find that defendant had knowledge that injury was probable. The court reasoned that the rope swing site had been in use since 1957, and there was no evidence that defendant had knowledge of previous accidents. *Neal,* 771 F. Supp. at 1073-74; *cf.* McMurray v. U.S., 918 F.2d 834, 837 n.2, 838 (9th Cir. 1990) (defendant acted willfully where defendant, knowing that other persons had actually been burned, failed to prevent the public from entering an area where there were dangerous hot springs). This case is similar to *Neal* because there is absolutely no evidence in the record that respondents, although aware that dirt bikers had used the property, were aware of any accidents on the sand piles since the gravel pit's existence in the 1960s. Therefore, the district court did not err in determining that respondents did not act willfully as a matter of law.

Boland's argument alleging malicious conduct is based on Leslie v. Jones Chemical Co., 92 Nev. 391, 551 P.2d 234 (1976), and ensuing authority, concluding that disregarding known safety procedures is sufficient to establish malice. Boland alleges that respondents disregarded a known safety procedure because they did not provide safeguards around the excavation as required in NRS 455.010. However, respondents are not required to comply with this statute, and therefore malice cannot be established by showing their failure to comply.

NRS 455.010 states:

> Any person or persons, company or corporation, who shall dig, sink or excavate, or cause the same to be done, or being the owner or owners, or in the possession under any lease or contract, of any shaft, excavation or hole, whether used for mining or otherwise, or whether dug, sunk or excavated for the purpose of mining, to obtain water, or for any other purpose, within this state, shall, during the time they may be employed in digging, sinking or excavating, or after they may have ceased work upon or abandoned the same, erect, or cause to be erected, good and substantial fences or other safeguards, and keep the same in good repair, around such

works or shafts, sufficient to guard securely against danger to persons and animals from falling into such shafts or excavations.

First, it would not be reasonable for the legislature to intend a fence or other safety measures to be placed around this 320-acre area—sufficient enough to keep "persons and *animals* from falling into such . . . excavations." NRS 455.010 (emphasis added).

Second, as a matter of policy, the idea of keeping persons from entering the land, according to NRS 455.010, would not comport with NRS 41.510 which is intended to prevent landowners from being liable when their land is used for recreational purposes—impliedly encouraging landowners to make recreational suitable land available for recreation. The land in question here, 320 acres of open desert where dirt bikers often ride, is the type of land contemplated in NRS 41.510 and not NRS 455.010.

Third, Boland did not fall into the excavation as one of the protected persons described in NRS 455.010. Boland instead fell off a hill after he was already inside the excavation. In *Gard,* 420 F. Supp. at 303-04, plaintiff fell down a mine shaft and subsequently sued the United States for his injuries. NRS 455.010 did not apply to the mine shaft because plaintiff was already inside the horizontal part of the mine when he fell down a vertical shaft. The court stated:

> [T]he purpose of the statute is to protect persons and animals who are, in effect, "minding their own business" and unexpectedly fall into a hole. The court in *Orr Ditch* [Orr Ditch Co. v. Dist. Ct., 64 Nev. 138, 178 P.2d 558 (1947)] speaks of protecting pedestrians and roaming cattle, not people who realize they are inside a mine.

*Gard,* 420 F. Supp. at 303-304. Like the plaintiff in *Gard,* Boland was already inside the excavation when he was injured; and therefore, respondents were not liable for this type of accident.

Boland's other contentions have been considered and rejected. The order of the district court is affirmed.

YOUNG, SPRINGER, SHEARING and ROSE, JJ., and PERKINS, D. J., concur.[2]

---

[2]The Honorable Thomas E. Perkins, District Judge, was designated by the Governor to sit in place of THE HONORABLE THOMAS L. STEFFEN, Chief Justice. Nev. Const. art. 6, § 4.