140 Nev., Advance Opinion 3

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| KATHRYN ABBOTT; AND ANDREW DODGSON-FIELD, Appellants, vs. CITY OF HENDERSON, AN AGENCY AND/OR POLITICAL SUBDIVISION OF THE STATE OF NEVADA, Respondent. | No. 84439 FILED JAN 25 2024 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a district court summary judgment in a negligence action. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

*Affirmed.*

The702Firm and Michael C. Kane and Bradley J. Myers, Las Vegas, for Appellants.

Nicholas G. Vaskov, City Attorney, and Wade B. Gochnour and Brandon P. Kemble, Assistant City Attorneys, Henderson, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, BELL, J.:

In *Boland v. Nevada Rock & Sand Co.*, this court set out the test for determining when an owner or occupant of land is protected from liability for another's recreational use of that land under NRS 41.510. 111 Nev. 608, 611, 894 P.2d 988, 990 (1995). In that opinion, we determined

NRS 41.510's protections applied to "rural, semi-rural, or nonresidential" property. *Id.* at 612, 894 P.2d at 991. Later that year, the legislature amended NRS 41.510 to apply to "any premises." We now recognize that *Boland* has been superseded by statute to the extent *Boland* limited NRS 41.510's application to "rural, semi-rural, or nonresidential" property. As to the underlying case, we hold the district court properly found that the park was covered by NRS 41.510's protection and that Appellant Kathryn Abbott was engaged in a recreational activity at the time of her injury on the property. We also conclude the Abbotts failed to present evidence to establish a genuine dispute of material fact regarding whether Respondent City of Henderson willfully or maliciously failed to guard or warn against a dangerous condition. Therefore, we affirm the district court's order granting summary judgment in favor of Henderson.

## FACTS AND PROCEDURAL HISTORY

In September 2019, Kathryn Abbott slipped while assisting her youngest child on the slide at Vivaldi Park in Henderson. A rubber surface, called Pour-in-Place, surrounded the slide at the park playground. Abbott asserts the adjacent sand was not raked level to the Pour-in-Place, exposing a 90-degree drop-off of about four inches from the edge of the Pour-in-Place to the ground. This drop-off was created when the original slide at Vivaldi Park was replaced in 2012: Henderson employees did not bevel the edge of the new Pour-in-Place to slope gently to the ground. Abbott alleges that the steep drop-off of the Pour-in-Place caused her to fall and fracture her leg in multiple places.

Abbott and her husband, Andrew Dodgson-Field (collectively, Abbott), filed a complaint against the City of Henderson, alleging negligence arising from premises liability and loss of consortium, respectively. In its answer, Henderson asserted an affirmative defense of immunity pursuant

to NRS 41.510. Henderson later moved for summary judgment, asserting various grounds for immunity. In its motion, Henderson relied on depositions from numerous park employees demonstrating Henderson's comprehensive plan for park maintenance, including daily, weekly, and monthly visits to inspect the parks for necessary repairs. Abbott opposed, relying on those same depositions to demonstrate Henderson's willful creation of the drop-off hazard and its knowledge that the sand meant to mitigate the risk created by this drop-off was routinely and easily displaced from the lip of the Pour-in-Place, exposing a trip hazard.

The district court found Henderson was immune from suit under Nevada's recreational use statute, NRS 41.510, and granted Henderson's motion for summary judgment. In doing so, the district court rejected Abbott's arguments that as a residential playground, Vivaldi Park fell outside the purview of NRS 41.510; Abbott's use of the playground was not a "recreational activity" as defined by the statute; and Henderson acted willfully when it created the drop-off and failed to properly maintain the sand as necessary. Abbott appealed. The court of appeals reversed and remanded. We granted Henderson's subsequent petition for review under NRAP 40B and now vacate the court of appeals' order.

## DISCUSSION

Nevada's recreational use statute provides that "an owner of any estate or interest in any premises, or a lessee or an occupant of any premises, owes no duty to keep the premises safe for entry or use by others for participating in any recreational activity . . . ." NRS 41.510(1). We have previously held that for the statute to apply, "(1) respondents must be the owners, lessees, or occupants of the premises where [the injury took place]; (2) the land where [the injury took place] must be the type of land the legislature intended NRS 41.510 to cover; and (3) [the injured party] must

Supreme Court
OF
Nevada

(O) 1947A

3

have been engaged in the type of activity the legislature intended NRS 41.510 to cover." *Boland*, 111 Nev. at 611, 894 P.2d at 990. NRS 41.510(3)(a)(1) provides an exception to immunity where landowners participate in "[w]illful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity." Because Henderson's ownership of the park was uncontested, we consider whether the district court properly concluded that Vivaldi Park is the type of property covered by the statute, that Abbott's activities qualified as recreational activities, and that Henderson did not intentionally create a hazard constituting willful conduct.

*Standard of review*

This court reviews a grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is only appropriate where, construing all evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id.*; *see* NRCP 56(a). Questions of law are reviewed de novo, *Martin v. Martin*, 138 Nev., Adv. Op. 78, 520 P.3d 813, 817 (2022), as are questions involving statutory interpretation. *Webb v. Shull*, 128 Nev. 85, 88, 270 P.3d 1266, 1268 (2012).

*The plain text of NRS 41.510 provides no limitation on the type of land appropriate for protection*

In two published opinions, this court has considered the type of land the legislature intended to cover under NRS 41.510. First, in *Brannan v. Nevada Rock & Sand Co.*, this court considered a landowner's liability for injuries suffered when a plaintiff rode a motorcycle in "an uninhabited area of desert." 108 Nev. 23, 24, 823 P.2d 291, 291-92 (1992). In *Brannan*, this court applied the statute to occupiers of "open land." *Id.* at 25, 823 P.2d at

292. In 1995, in *Boland*, this court considered an injury that occurred in a small mining basin and engaged in a land-type analysis, concluding "the intent of the legislature is that the property be used for recreation." 111 Nev. at 612, 894 P.2d at 991. This court then held that to establish immunity under NRS 41.510, "the type of property should be rural, semi-rural, or nonresidential." *Id.*

After the *Boland* decision, the legislature made two significant changes to the text of NRS 41.510. First, the legislature expanded the kinds of owners eligible for immunity from "an owner, lessee or occupant of premises" to "an owner *of any estate or interest in any premises,* or a lessee or *an* occupant of *any* premises." 1995 Nev. Stat., ch. 311, § 1, at 790. Second, the legislature expanded the list of eligible recreational activities from nine covered activities to at least twenty. *Id.* These changes remain in effect in the current statute. *See* NRS 41.510.

When the legislature alters a statute, that alteration "must be given effect by the courts." *Orr Ditch & Water Co. v. Just. Ct. of Reno Twp.*, 64 Nev. 138, 164, 178 P.2d 558, 571 (1947). By its plain text, NRS 41.510 now applies to "any premises." *See Young v. Nev. Gaming Control Bd.*, 136 Nev. 584, 586, 473 P.3d 1034, 1036 (2020) ("[W]e will interpret a statute or regulation by its plain meaning unless the statute or regulation is ambiguous."). Accordingly, we determine that the statute has superseded *Boland*'s land-type limitations holding, and we now clarify that NRS 41.510 protections can apply to any premises.

Abbott's assertion that the land at issue must be undeveloped is belied by the plain language of the statute, which expressly contemplates immunity for injuries caused by structures. *See* NRS 41.510(1) (providing that landowners owe no duty to protect or warn recreational users of "any

SUPREME COURT
OF
NEVADA

(O) 1947A

5

hazardous condition, activity or use of any structure on the premises"); *see also Valenti v. State, Dep't of Motor Vehicles*, 131 Nev. 875, 879, 362 P.3d 83, 85 (2015) (holding when a statute's plain meaning is clear, this court will not go beyond the text). Given the plain language of the statute, the district court properly concluded that Vivaldi Park is a premises included in NRS 41.510's statutory protections.

*Abbott was engaged in a recreational activity when she injured herself at Vivaldi Park*

While the legislature did not include any limiting language with respect to the type of land eligible for protections, it did enable other constraints to immunity, namely, limiting protections to injuries incurred during participation in a "recreational activity." The legislature defined "recreational activity" through a nonexhaustive list:

> (a) Hunting, fishing or trapping;
>
> (b) Camping, hiking or picnicking;
>
> (c) Sightseeing or viewing or enjoying archaeological, scenic, natural or scientific sites;
>
> (d) Hang gliding or paragliding;
>
> (e) Spelunking;
>
> (f) Collecting rocks;
>
> (g) Participation in winter sports, including cross-country skiing, snowshoeing or riding a snowmobile, or water sports;
>
> (h) Riding animals, riding in vehicles or riding a road, mountain or electric bicycle;
>
> (i) Studying nature;
>
> (j) Gleaning;
>
> (k) Recreational gardening; and

> (l) Crossing over to public land or land dedicated for public use.

NRS 41.510(4).

We are convinced walking and assisting a child playing on a playground is similar to picnicking, hiking, riding a bicycle, and crossing over public land. Courts in several other jurisdictions have concluded that walking is a recreational activity sufficient to provide recreational use protections.[1] Likewise, *Curran v. City of Marysville* concluded a child's "playground activity" was a recreational activity sufficient for protections in consideration of "the ever broadening effect of the Legislature's amendments to the statutory language." 766 P.2d 1141, 1143-44 (Wash. Ct. App. 1989). Federal circuit courts have similarly suggested that recreational activities are defined broadly.[2] *See Leigh-Pink v. Rio Props., LLC*, 138 Nev., Adv. Op. 48, 512 P.3d 322, 328 (2022) (where "the plain language of a statutory term is in accord with the term's definition at common law, we elect to interpret them similarly"). Finally, the Nevada Legislature made clear through both the plain text and legislative history

---

[1]*See Wringer v. United States*, 790 F. Supp. 210, 212-13 (D. Ariz. 1992); *Lewis v. City of Bastrop*, 280 So. 3d 907, 910 (La. Ct. App. 2019); *Richard v. La. Newpack Shrimp Co.*, 82 So. 3d 541, 546 (La. Ct. App. 2011); *Moskalik v. Mill Creek Metroparks*, 50 N.E.3d 946, 954 (Ohio Ct. App. 2015); *Lasky v. City of Stevens Point*, 582 N.W.2d 64, 66 (Wis. Ct. App. 1998).

[2]*See Palmer v. United States*, 945 F.2d 1134, 1137 (9th Cir. 1991) (determining that a plaintiff who entered a park to watch his granddaughter's soccer game exuded behavior "consistent with relaxation and recreation," such that Hawaii's recreational use statute applied); *Schneider v. United States, Acadia Nat'l Park*, 760 F.2d 366, 368 (1st Cir. 1985) (concluding that drinking coffee was a recreational activity for purposes of Maine's recreational use statute; reasoning that "[a]ny number of clearly recreational activities suggest themselves, from bird-watching to sunbathing, to playing ball on the beach").

that the enumerated list is expansive. *See* Hearing on A.B. 313 Before the Assemb. Comm. on Judiciary, 68th Leg. (Nev., Apr. 6, 1995) (emphasizing the nonexhaustive nature of the list). Accordingly, we conclude that Abbott was engaged in "recreational activities" as contemplated by NRS 41.510.

Abbott's suggested application of the doctrine of *noscitur a sociis*, or the principle that words are known by the company they keep, does not change our conclusion. To the extent principles of *noscitur a sociis* support a reading of "recreational activity" as one that requires undeveloped space or use of land in its natural state, that reading is contravened by the express text of the statute, which contemplates immunity for injuries associated with the "use of any structure on the premises." NRS 41.510(1). Walking or assisting a child playing on a playground would be considered recreational both under the common law and under interpretations of analogous recreational use statutes from other jurisdictions. We see no reason to depart from these authorities. Walking or assisting a child playing on a playground constitutes a recreational activity under NRS 41.510. We therefore agree with the district court that the land at issue is eligible for protection and Abbott's activity fits within the meaning of "recreational activity."

*Henderson did not willfully or maliciously fail to guard against the dangerous condition*

Otherwise immune entities are nevertheless liable where they participate in "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity." NRS 41.510(3)(a)(1). This court has determined willful or malicious conduct is "intentional wrongful conduct, done *either* with knowledge that serious injury to another will probably result, *or* with a wanton or reckless disregard of the possible result." *Boland*, 111 Nev. at 612-13, 894 P.2d at 991 (quoting *Davies v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

8

*Butler*, 95 Nev. 763, 769, 602 P.2d 605, 609 (1979)). Willfulness is generally a question of fact; however, where plaintiffs present no evidence of willful conduct, summary judgment is appropriate. *Id.* at 613, 894 P.2d at 992.

Abbott argues that Henderson willfully created the hazardous condition. Yet, willful conduct with respect to the baseline condition necessary for injury is not the same as willful failure to guard against the hazard. *See, e.g., Kendall v. State*, No. 64550, 2015 WL 1441865, at *3 (Nev. Mar. 26, 2015) (Order Affirming in Part, Reversing in Part, and Remanding) ("The record shows merely that Kendall willfully drove the vehicle and does not suggest, to any degree, that he willfully or maliciously crashed the vehicle or otherwise caused damage."); *In re Breen*, 30 Nev. 164, 176, 93 P. 997, 1000 (1908) (stating where a lawyer intentionally criticized the court, he did not "willfully or maliciously" bring the court into disrepute).

Willfulness, here, requires "a design to inflict injury." *Crosman v. S. Pac. Co.*, 44 Nev. 286, 301, 194 P. 839, 843 (1921); *see also Mitrovich v. Pavlovich*, 61 Nev. 62, 67, 114 P.2d 1084, 1086 (1941) (finding no willful conduct when the defendant crashed the car he was driving, even though the defendant lacked a driver's license, had only driven twice in his life before, and had never driven on a highway). Here, Abbott failed to present admissible evidence that Henderson had such a design. Henderson maintains the park: workers go to each of Henderson's parks daily to pick up trash and perform regular upkeep, a park facilities maintenance person inspects each park weekly, and a certified playground inspector visits each playground monthly to make any necessary repairs. Contrary to Abbott's assertion, the evidence before the district court demonstrated that Henderson exercised some level of care with respect to the park, and Abbott failed to provide any evidence of a design to cause an injury or a reckless

disregard to the risk of injury. *See Bearden v. City of Boulder City*, 89 Nev. 106, 110, 507 P.2d 1034, 1036 (1973) ("To be wanton such conduct must be beyond the routine.").

Additionally, Abbott presented no evidence of any prior accidents related to the unbeveled surface, although the surface had been in place for over seven years. In the face of Henderson's maintenance procedure and the lack of any evidence that Henderson willfully or maliciously created a dangerous condition, no genuine dispute of material fact remained, and Henderson was entitled to judgment as a matter of law. Thus, the district court properly granted summary judgment in favor of Henderson.

## CONCLUSION

The plain text of NRS 41.510 contains no land-type limitation. To the extent *Boland* suggested otherwise, we hold *Boland* is superseded by statute. Thus, the district court properly concluded that NRS 41.510's protections applied to Vivaldi Park. Additionally, the district court properly concluded that walking and assisting a child on a park playground are recreational activities under the statute. Finally, Abbott failed to demonstrate a genuine dispute of material fact regarding whether the City

SUPREME COURT
OF
NEVADA

(O) 1947A

of Henderson willfully or maliciously failed to guard or warn against a dangerous condition. Accordingly, we affirm the judgment of the district court.

_____, J.
Bell

We concur:

_____, C.J.
Cadish

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Parraguirre

(O) 1947A